Roger D. HARNACK and Harold Eugene
Johnson, Plaintiffs,

v.

The DISTRICT COURT OF WOODBURY
COUNTY, Hon. C. F. Stilwill,
Presiding, Defendant.

No. 54059.

Supreme Court of Iowa.

Sept. 2, 1970.

Harry H. Smith, Sioux City, for plaintiffs.

Edward Samore, County Atty., and Bernard Brown, Asst. County Atty., Sioux City, for defendant.

MOORE, Chief Justice.

This is an original certiorari, on consolidated cases, to test the validity of defendant court's order changing place of trial of criminal charges against plaintiffs from Woodbury to Pottawattamie county. We annul the writ.

On November 18, 1969 two county attorney's informations were filed in Woodbury County District Court against Roger D. Harnack. One charged him with the crime of injury to property. It charged he "did unlawfully, wilfully, and feloniously, with intent to destroy, or injure a building, to-wit: at 221 S. Davidson St., Sioux City, Iowa, residence of Gary S. Goodwin, by depositing, or throwing dynamite therein, all in violation of Section 697.3 of the 1966 Code of Iowa." Goodwin was an employee of Iowa Beef Packers, Inc.

The second information against Harnack charged the crime of arson in that he "did unlawfully, wilfully, maliciously, and feloniously cause to be burned a garage, being a partial of the dwelling house of Mrs. Donald Bartholonew, at 3806 3rd Ave., Sioux City, Iowa, all in violation of Section 707.1 of the 1966 Code of Iowa." An employee of Iowa Beef Packers, Inc., had moved from the described premises a short time before the garage fire.

On November 24, 1969 two county attorney's informations were filed in Woodbury County District Court against Harold Eugene Johnson. One charged him with the crime of murder. It charged he "did unlawfully, wilfully, and feloniously murder Nancy Nielson, all in violation of Section 690.01 of the 1966 Code of Iowa." The second information charged Johnson with assault with intent to murder in that he "did unlawfully, wilfully, and feloniously assault Michaelene Niesen with intent to murder her, all in violation of Section 690.6 of the 1966 Code of Iowa." Nancy and Michaelene were sisters. Each was wounded by the same bullet from a gun in the hands of Johnson. Harnack was present

in the girls' apartment when the incident took place. Johnson claimed the shooting was accidental. Subsequent to the shooting reports were made that Michaelene had been acting as an informer for Iowa Beef.

Early in December 1969 Harnack and Johnson filed motions for continuance and for change of venue in each case against them. At all pertinent times they have been represented by their present counsel. The allegations of each motion are substantially the same. Each alleged he was a member of the union, Amalgamated Meat Cutters and Butcher Workmen of North America, he was an employee of Iowa Beef Packers, Inc. at its plant at Dakota City, Nebraska (10 miles southwest of Sioux City, Iowa, where most of the employees lived), since August 24, 1969 a labor dispute had existed at the plant, each had engaged in picketing the plant, the alleged acts and crimes of each had been proximately linked with and connected to the labor dispute by the various news media in Woodbury County and "that because of the notoriety, intense public emotion, and extended and minute coverage by the local and even national news media of all facets of the above described labor dispute with which these cases have been constantly associated, it is impossible for the local enforcement officers, courts, and eventually a local jury to afford the defendant herein the kind of dispassionate and fair trials to which he is guaranteed under both the Constitution of the United States and the State of Iowa."

Attached to each motion was a compilation of news stories from the Sioux City Journal, which has a large circulation in Woodbury County and adjacent areas, concerning the labor dispute and crimes alleged to be connected therewith. Like coverage by three Sioux City television and four radio stations was alleged.

It was also alleged that following August 24, 1969 the labor dispute had involved Iowa Beef Packer installations at Mason City, LeMars, Fort Dodge and Denison, Iowa, followed by wide publicity in connection therewith.

Attached to each motion were approximately one hundred affidavits of Woodbury and Monona County residents verifying the basic allegations thereof. The thrust of these affidavits was that Harnack and Johnson because of prejudice and excitement could not receive a fair and impartial trial in either Woodbury or Monona County.

The motions alleged the situation described in Woodbury County prevailed throughout western Iowa and that a fair trial could only be assured by a change of venue to central or eastern Iowa and the closest area would be Polk County.

By stipulation these motions were consolidated for submission to the lower court and are so submitted in this proceeding. On hearing, in addition to introduction of a large volume of news copy, testimony was given by officers and employees of the television and radio stations, police officers and members of a Sioux City civic group organized to help control unrest and crime.

The record includes evidence that between August 24, 1969 and the hearing which commenced December 11, 1969 there had been more than 250 reported acts of violence directed at workers of Iowa Beef plants who did not join the strike and property of or businesses which in some way served Iowa Beef. These included nine instances of fire bombings of incendiary fires, twelve instances of dynamiting including the Dakota County sheriff's home and electrical substation which served the plant, two instances of shooting into private homes, 26 instances of damage to cars and trucks and 209 instances of tire slashing.

These incidents were given almost daily factual reporting by the news media in Sioux City. Members of the press were called by plaintiffs and testified in detail of the coverage given. Several opined

Harnack and Johnson could receive a fair trial in Woodbury County.

The trial court, defendant here, on January 2, 1970 filed well prepared findings of fact and rulings on the motions. After reviewing the evidence of the many incidents of violence, to which we have referred supra, the court found the news media coverage had been restrained, responsible, factual and without prejudice to Harnack and Johnson. The court then stated: "But the mere fact that there have been more than 250 reported acts of violence attributed to the strike makes it difficult for the defendant to have a fair trial here in the present climate. At the same time a community should not be helpless against violence and when those accused of such acts are apprehended they should be brought to trial as speedily as may be consistent with orderly judicial process and the granting of a fair trial to the accused. The record does not indicate that the present climate is likely to change in the foreseeable future. The motion for continuance is therefore overruled."

The parties agreed at trial time and continue to agree such climate as existed in Woodbury County also existed in Monona County and the trial court so held. The 4th Judicial District, by statute, is composed of two counties, Woodbury and Monona. Monona is adjacent to and south of Woodbury.

As observed by the trial court Judicial Districts 15, 16 and 18 ajoin the 4th. The court found a great amount of publicity had reached the 16th and 18th but as to Pottawattamie County in the 15th that was not true. The court stated the order for change of venue to Pottawattamie County would not be immediately entered as the Harnack and Johnson brief had indicated their request was only for a transfer to Polk County.

On January 8, 1970 the motions for change of venue were amended including these allegations. "That defendant strongly believes and therefore alleges that the only counties in Iowa in which he could secure a fair and impartial trial at this time is in a county containing a metropolitan city of comparable size to Sioux City in either central or eastern Iowa; that factually the closest and most convenient such county is Polk County, Iowa. That it is the intent of defendant in his petition for change of venue that it be construed as a request for a change of venue away from Woodbury County and the other counties of western Iowa to a county of comparable metropolitan characteristics in central or eastern Iowa and that the preferred and most convenient such county is Polk County, Iowa."

The trial court found the record failed to sustain the claim a fair and impartial trial could not be received in western Iowa, defendant had no right to choose the county to which a transfer was to be made, there had been some publicity about the Sioux City events in every Iowa county and on January 13, 1970 ordered each case against Harnack and Johnson transferred for trial to the western section of Pottawattamie County. Council Blufs where the cases would be tried is a metropolitan city of smaller population than Sioux City. It is on the western border of Iowa and approximately 90 miles south of Sioux City.

Proceedings in the trial court have been stayed. On this original certiorari plaintiffs' several contentions will be considered under the real question set out in the brief filed on behalf of defendant judge— "Did the Respondent act beyond his jurisdiction, or illegally, or without authority in ordering the change to Pottawattamie County, in Council Bluffs?"

 I. Certiorari is appropriate where an inferior tribunal is alleged to have exceeded its proper jurisdiction or otherwise acted illegally. The hearing here is not de novo and we do not review the findings of fact of the inferior tribunal further than to ascertain that they are sustained by competent and substantial evidence. Only questions of law are presented. Rule 306, Rules of Civil Procedure;

Cedar Rapids Steel Transp. v. Iowa State Commerce Comm., Iowa, 160 N.W.2d 825, 830, 831; Sueppel v. Eads, 261 Iowa 923, 926, 156 N.W.2d 115, 116, 117.

Plaintiffs' contention the court erred in finding the prejudice and excitement existing in Woodbury and Monona counties did not exist in Pottawattamie county is without merit. That finding is supported by competent and substantial evidence. Pottawattamie county is beyond the normal range of Sioux City's three television and four radio stations. Circulation of the Sioux City Journal is primarily to the residents of Sioux City and the immediate area.

II. Plaintiffs argue the trial court erred as a matter of law in transferring the trials to a county in western Iowa contrary to their request the transfer be to a county in central or eastern Iowa. We do not agree.

Regarding a change of venue section 778.9, Code, 1966, provides: "Discretion of the court. The court, in the exercise of a sound discretion, must, when fully advised, decide the matter of the petition according to the very right of it." Under this section and also the general rule, the selection of the county to which the cause is to be removed for trial rests in the sound discretion of the trial judge. 21 Am.Jur. 2d, Criminal Law, section 430.

A defendant on motion for change of venue does not have a right to select a particular county for his trial. State v. Thompson, 266 Minn. 385, 123 N.W.2d 378, 382; Olive v. State, 11 Neb. 1, 7 N.W. 444, 448. 22 C.J.S. Criminal Law § 213, page 558, states: "Applicant for a change of venue has no right to select the county to which the case shall be removed, nor is the court bound by applicant's affidavit objecting to a particular county."

III. It is universally recognized an accused has a right to a change of venue upon the ground of inability to ob-tain a fair trial in the county where the indictment is found or because of local prejudice and excitement. 21 Am.Jur.2d, Criminal Law, section 413, page 427. This right is within the guarantee of Amendments 6 and 14 of the Constitution of the United States and Article I, sections 9 and 10, of the Constitution of the State of Iowa. With these principles the parties do not disagree. The most difficult problem here as in the lower court is their application in view of the statutory provisions of chapter 778, Code, 1966.

Section 778.1 provides: "Right to change. In all criminal cases which may be pending in any of the district courts, any defendant therein, or the state, in cases where defendant is charged with felony, may petition the court for a change of place of trial to another county."

Section 778.2 provides: "Petition by defendant. Such petition, when filed by the defendant, must set forth the nature of the prosecution, the court where the same is pending, and that such defendant cannot receive a fair and impartial trial owing to the prejudice of the judge, or to excitement or prejudice against the defendant in such county, and be verified on information and belief by the affidavit of the defendant."

Section 778.10 provides: "Order of change of venue. If sustained, the court must, if the ground alleged be the prejudice of the judge, order the change of venue to the most convenient county in an adjoining district to which no objection exists. If sustained on the ground of excitement and prejudice in the county, it must be awarded to such county in the same district in which no such objection exists."

With a finding defendants could not receive a fair trial in either of the two counties comprising the 4th Judicial District literal construction and application of the last sentence of section 778.10 would result in denial of the right to a change

of venue which the legislature recognized in sections 778.1 and 778.2.

Faced with this problem, which we have not heretofore considered, the lower court refused to give literal construction and application to section 778.10 and fixed place of trial in Pottawattamie County in the adjoining 15th Judicial District. For the reasons which we shall point out infra we hold the lower court in making that order did not act beyond his jurisdiction or illegally.

IV. First a short history of the statute, now section 778.10, should be given. Its provisions have been in every Code beginning with that of 1851 to the present time. When enacted Iowa, by statute, had three judicial districts each comprised of at least three counties.

Since 1851 the legislature necessarily has been required to redistrict from time to time. By section 604.8, Code, 1966, twenty-one judicial districts are established, three of which are one county districts. By chapter 399, Acts of the Sixty-second General Assembly (1967), the number of judicial districts was reduced to 18, one of which is a single county district (Polk). Thus literal application of section 778.10 has been made impossible. The section should be repealed and rewritten.

In Turner v. State, 87 Fla. 155, 99 So. 334, where similar facts and statutes presented a like problem as now before us the court approved a change of venue to a county in an adjoining district. At page 336, 99 So., the court states: "In instances like this we think the letter of the law must keep pace with the spirit and purpose of the law, as indicated by the statutes making judicial circuits of single counties, and circuit courts in this state being courts of equal or co-ordinate jurisdiction, this allegation of error is not well grounded."

V. Although plaintiffs requested a change of venue to outside the 4th Judicial District they now argue under one assigned error the provisions of section 778.10 prohibit such a transfer. To deny a transfer would require us to ignore the now well established rule that statutes should always be interpreted in such a manner as to give effect and not thwart the intention of the legislature and so that unjust, unreasonable and absurd consequences are avoided. Krueger v. Fulton, Iowa, 169 N.W.2d 875, 877; Janson v. Fulton, Iowa, 162 N.W.2d 438, 443; Brandon v. Roy, 259 Iowa 1271, 1275, 1276, 147 N.W.2d 810, 813; State v. Bishop, 257 Iowa 336, 340, 132 N.W.2d 455, 457; 50 Am.Jur., Statutes, section 456. In establishing one and two county judicial districts the legislative intent seems obvious that section 778.10 was to be given liberal construction to protect an accused's right to a fair and impartial trial.

VI. Probably the most controlling reason the lower court's order must be approved is the rule that when procedural legislation governing change of venue conflicts with basic constitutional rights to speedy trial by an impartial jury, to the extent the legislative enactment deprives accused of due process of law, such legislation must yield. Cockrell v. Dodds, 238 Ark. 348, 381 S.W.2d 756; State v. Rideau, 246 La. 451, 165 So.2d 282; State ex rel. Gannon v. Porter Circuit Court, 239 Ind. 637, 159 N.E.2d 713; Ellzey v. State, 158 Tex.Cr.R. 604, 259 S.W.2d 211; Turner v. State, supra, 87 Fla. 155, 99 So. 334; State v. Harvey, 128 S.C. 494, 122 S.E. 860; Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751.

VII. The lower court's finding, "The record does not indicate that the present climate is likely to change in the foreseeable future", is clearly established by the evidence. The court did not act illegally in overruling the motions for continuances.

For the reasons set forth above the writ of certiorari is

Annulled.

All Justices concur except RAWLINGS, J., who takes no part.