**STATE of Iowa, Appellee,**

v.

**Michael Charles NICCUM, Appellant.**

**No. 53718.**

Supreme Court of Iowa.

Oct. 13, 1971.

Anthony M. Critelli, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Michael J. Laughlin, Asst. Atty. Gen., Ray Fenton, County Atty., Des Moines, for appellee.

MASON, Justice.

February 6, 1969, Michael Charles Niccum was indicted by a Polk county grand jury for murder as defined in sections 690.1 and 690.2, The Code 1966. Defendant entered a plea of not guilty, being represented by counsel previously appointed. Trial to a jury resulted in his conviction of murder in the first degree. Motion for new trial was overruled and defendant was sentenced to imprisonment in the state penitentiary for life at hard labor. He seeks reversal of his conviction.

About 6:15 p. m. November 20, 1968, an employee of Slinker's Sporting Goods located in the Wakonda Shopping Center in Des Moines heard screams and "thudding sounds" coming from the Arnold Palmer Cleaners located next door. Further investigation led to discovery of Linda Lea Boothe, an employee of the cleaners, lying on her back on the floor in the back room or office of the cleaners. Her head was covered with blood, the head of a golf club was on her chest and a "black sealer type hose" around her neck. She was still alive. The fire rescue squad was called

and Miss Boothe was removed to a Des Moines hospital where she died at 8:25.

The Polk county medical examiner performed an autopsy at a Des Moines funeral home and expressed the opinion her death was due to multiple fractures of the facial bones and skull caused by bludgeoning or beating with a semi-blunt instrument in contrast to a sharp instrument such as a knife and that the injuries could have been caused by a golf club and more than likely, a wood.

After an extensive police investigation a warrant was issued December 4, 1968, for the arrest of Michael Niccum for the crime of murder. Defendant was arrested by the St. Louis, Missouri, police in that city December 28, 1968. December 30 Niccum appeared in a St. Louis court without the presence of counsel and waived extradition. His custody was taken by R. E. Weichman, a Des Moines detective, and Roland O. Hoffman, an agent of the Iowa Criminal Bureau of Investigation, under the Iowa warrant. The officers and Niccum drove from St. Louis to Des Moines arriving the evening of December 31. The trip covered approximately nine hours during which time defendant made statements which tended to connect him with commission of the crime for which he was arrested. Upon arrival at the Des Moines police station there was more exchange between defendant and Weichman involving the same subject.

Defendant was arraigned in the Des Moines municipal court January 1, 1969, and held without bond. Counsel was appointed for defendant. One place in the record indicates the appointment was made January 1 and in another, January 7.

Following defendant's plea, his counsel filed various pretrial motions which were heard and later determined by the court March 26 and 27. Insofar as rulings on these motions are challenged by defendant's assignments of error, they will be discussed in considering defendant's assignments.

Trial commenced April 7. At the conclusion of the State's evidence defendant moved to dismiss the indictment. The motion was overruled and defendant, in offering his defense, testified in his own behalf. At the close of all evidence defendant's motion was renewed and again overruled and the matter submitted to the jury.

Defendant's motion for new trial was overruled and he was sentenced. He appeals from this judgment assigning six errors relied on for reversal which will be considered in the order argued.

I. Under his first assignment defendant contends the court committed reversible error in failing to sustain his motion to suppress testimony of Weichman and Hoffman relating to incriminating admissions made by Niccum and in denying him a new trial because of such failure to suppress testimony.

Defendant maintains that aside from these incriminating statements admitted over objection, there would have been no other testimony or evidence introduced in the State's case in chief which would to any significant or sufficient manner corroborate testimony of Tom Logsdon whom the jury determined was an accomplice in answer to a special interrogatory submitted to them. Under section 782.5, The Code, a conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect defendant with commission of the offense.

Logsdon, age 17 living with his mother in Pleasantville, became acquainted with defendant early in the summer of 1968. He and Niccum drove from Pleasantville to Des Moines November 20. He testified as a State's witness and detailed their activities that day including being at the Arnold Palmer Cleaners. Logsdon told of the events leading up to Niccum's entering the cleaners, his return to the car and of Niccum's admission he had to kill

the girl. He specified the points where they discarded defendant's clothes, sap, golf club and other items on the trip back to Pleasantville. Logsdon had not been indicted in connection with the crime involved. He testified he had been promised immunity.

"We think under modern holdings of the Supreme Court of the United States we are bound to consider any infringement on the constitutional rights of those accused of crimes as denials of due process." Sewell v. Lainson, 244 Iowa 555, 564, 57 N.W.2d 556, 562.

Defendant argues both in motion to suppress and at hearing on motion that he was not afforded his constitutional rights during his incarceration at St. Louis. Specifically, he asserts that while in St. Louis he was not afforded the benefit of a warning of his full constitutional rights as enunciated in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974.

According to defendant, upon arrest by St. Louis police, he was advised only that he did not have to talk. Defendant claims he was not told of his right to counsel. Furthermore, he insists he made requests for an attorney on many occasions but was denied the right to see one. Finally, he contends he appeared without counsel to waive extradition, but was examined by the judge only as to whether he was acting of his own free will.

However, at no point does Niccum contend he was interrogated by St. Louis authorities, whom he said had been instructed not to question him. He is not appealing admissions of any statements made in St. Louis, for indeed no statements from that period of time were introduced in the present trial; defendant is not appealing extradition.

The events in St. Louis assume importance only with relation to statements made to Des Moines police officers on the return trip to Des Moines. Defendant does not contend and there is no evidence in the record Niccum was subjected to interrogation in St. Louis by Weichman or Hoffman either before he waived extradition or at any time before they started the return trip to Des Moines. All statements objected to were made after Niccum's custody had been changed from the St. Louis police to the Iowa authorities and after the trip to Des Moines was started. The proposition that these statements were made is uncontroverted. Nevertheless, defendant insists the alleged denial of his constitutional rights in St. Louis so tainted subsequent statements as to make them inadmissible at trial. Such is not necessarily the law.

In Westover v. United States, 384 U.S. 493, 494, 86 S.Ct. 1602, 1638, 16 L.Ed.2d 694, 734, announced simultaneously with and incorporated in Miranda, defendant was arrested by local authorities and subjected to lengthy and intense interrogation extending over 14 hours without being advised of his constitutional rights. Without significant break in time, federal agents continued interrogation but advised defendant of his constitutional rights. Defendant subsequently confessed and was convicted by a jury. The Supreme Court reversed stating that the cumulative effect of the interrogation process cannot be denied or ignored and in such circumstances an intelligent waiver of constitutional rights cannot be assumed.

The court further concluded:

"We do not suggest that law enforcement authorities are precluded from questioning any individual who has been held for a period of time by other authorities and interrogated by them without appropriate warnings. A different case would be presented if an accused were taken into custody by the second authority, removed both in time and place from his original surroundings, and then adequately advised of his rights and given an opportunity to exercise them. But here the FBI interrogation was conducted immediately follow-

ing the state interrogation in the same police station—in the same compelling surroundings. Thus, in obtaining a confession from Westover the federal authorities were the beneficiaries of the pressure applied by the local in-custody interrogation. In these circumstances the giving of warnings alone was not sufficient to protect the privilege."

◼ The factual situation in Westover is distinguishable from the case before us. Niccum was arrested Saturday, taken before the St. Louis court on the extradition matter Monday and transported from St. Louis to Des Moines Tuesday, December 31. While in the custody of the St. Louis police, Niccum was not interrogated. According to his own testimony, these authorities advised him he did not have to talk to them, and, as stated, Niccum also testified the St. Louis authorities had been instructed not to question him. As pointed out, statements objected to were given after the accused had been taken into custody by the Iowa authorities and removed from the St. Louis jail for return to Des Moines. It cannot be claimed as in Westover that the second authorities, here the Iowa officers, were the beneficiaries of any pressure applied by local in-custody interrogation.

◼ Thus, admissibility of statements objected to turns on existence of proper warnings by the Iowa authorities of defendant's constitutional rights and subsequently on a knowing, intelligent waiver by him.

The trial court ruled statements made by Niccum in the conversation on the return trip between the officers and Niccum did not fall within the proscription of the Miranda decision. Our conclusion this determination was correct is not based on the hearsay statement that the St. Louis judge specifically informed defendant of all his constitutional rights at the time of the extradition hearing. Neither is it based on the presumption indulged in by the Polk district court that the St. Louis judge fully informed Niccum of his rights. Rather, our determination that admission in evidence over defendant's timely objection of any statements made by Niccum bearing on his guilt of the crime charged did not violate his constitutional rights is based on our finding arrived at after an independent examination of the record Niccum voluntarily, knowingly and intelligently made the statements in issue after being fully informed and advised of his constitutional rights by Weichman before the officers instituted any interrogation.

" * * * The rules as announced in Miranda require generally that the State 'demonstrate' to *our* satisfaction that defendant had been duly advised of his constitutional rights prior to the statements or information given, that he voluntarily, knowingly, and intelligently made the alleged statements after the warnings are given to him, and that they were not secured by force, threats or promises, or by artifice, deception, trickery or fraud. Failure to so demonstrate compliance with these requirements, of course, would call for a rejection of a claim of waiver by an appellate court." (emphasis in the original). State v. Williams, 182 N.W.2d 396, 401 (Iowa 1970).

Officer Weichman testified at hearing on defendant's motion to suppress he advised defendant of his rights on two separate occasions—at the St. Louis jail when custody was transferred and while in Officer Hoffman's car at the very beginning of the journey. He also stated defendant admitted understanding his rights. Weichman did not say he advised defendant a third time in Des Moines, but defendant by his own testimony admits he was then informed of his right to counsel and to remain silent.

Defendant claimed at hearing his constitutional rights were never fully explained to him. His contention becomes somewhat confusing here because at some instances Niccum seems to contradict himself and to admit at least partial compliance with Miranda requirements.

In detailing the circumstances under which the incriminating statements were made, we quote from the record of defendant's direct examination at the hearing on the motion to suppress:

"During this trip * * * I was questioned concerning the matter with which I am now charged * * *. They advised me that I did not have to talk. They did not say anything else to me relative to my rights. * * *

"After I arrived in Des Moines * * * [and] * * * was checked in * * * I did discuss some of the aspects of the case at that time. I was not given any advice as to my rights but they did say I didn't have to talk to them and they also told me I had a right to an attorney and also the right to remain silent. They did not tell me that anything I said could be used against me."

On cross-examination defendant testified:

"At that time [in St. Louis] detective Weichman did not read to me the four Miranda warnings. * * * He did not read to me and tell me at that time that I did not have to say anything, that anything I said could be used against me, that if I did not want to say anything without having a lawyer present and that if I didn't have the funds to hire a lawyer the State would provide one for me. He didn't tell me these things. * * *

"Before I mentioned this and before this conversation took place [defendant's statement during trip to Des Moines], they did not tell me I didn't have to answer any questions or I didn't have to say anything. * * *

"At this time [in Des Moines] the officers said that I didn't have to talk if I didn't want to."

The following from the record of Weichman's testimony at the motion hearing conflicts significantly with defendant's testimony:

"I first saw the defendant on the morning of December 31st at the jail of the St. Louis, Missouri, Police Department. The defendant was advised of his rights at that time at the city jail as soon as the St. Louis authorities turned him over to our custody. I told him that he had a right to counsel and if he could not afford one the courts would appoint one for him; anything that was said to Special Agent Hoffman or myself could be repeated in court. I asked him if he understood and he said he did. We told him that he didn't have to say anything to we officers. * * * There was no conversation between Officer Hoffman and I and the defendant during this time.

"After we all got into State Agent Hoffman's car, I again advised Mr. Niccum of his rights. And again I went through the three or four different things that I was to tell him. I asked him if he wanted to talk about the case and he didn't answer at that time. We talked in generalities and after being on the highway for a period of time he, of his own free will, started talking about the series of events on that day of November the 20th, 1968. I had a conversation with the defendant at the Des Moines Police Department when we arrived in Des Moines. This was after he was booked and after he made a phone call to his lawyer.

"We went into the interrogation room and I had in my possession a legal tablet and I asked if it was all right with him if I put down in writing the conversation that had taken place while we were traveling on the highway, and he said after a few moments, he said he would rather we stopped, he wanted to talk to his attorney and our conversation ceased and he was placed in a cell. I had no further conversation with him after that."

Agent Hoffman did not testify at the motion hearing but was a State's witness at trial. Hoffman testified that Weichman advised Niccum of his constitutional rights and read the arrest warrant to him. We

quote from the record a portion of his testimony:

"Niccum was advised that he had the right to remain silent, that anything that he said could and would be used against him in court, that he could have an attorney present while we questioned him, if he wished, and that if he could not afford an attorney, the courts would appoint him one. The defendant answered in the affirmative, indicating that he understood these rights. * * * Later on, while we were in the car and driving from St. Louis to Des Moines, this warning was again given to the defendant, Michael Niccum."

We are fully aware of the heavy burden the State has to demonstrate defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Miranda v. State of Arizona, 384 U.S. at 475, 86 S.Ct. at 1628, 16 L.Ed.2d at 724.

The State has fully demonstrated under this record Niccum was adequately advised of his full constitutional rights after his custody was taken by the Iowa officers and before the officers instituted any process of interrogation which lent itself to eliciting incriminating statements. Escobedo v. Illinois, 378 U.S. 478, 490–491, 84 S.Ct. 1758, 1765, 12 L.Ed.2d 977, 986.

It must be apparent that our conclusion Niccum fully understod the extent and nature of his constitutional rights is not based on a silent record.

Although Niccum was properly advised of his constitutional rights by the Iowa authorities, the State had the additional burden of establishing he voluntarily, knowingly and intelligently waived his right to remain silent and his right to assistance of counsel.

■ Waiver is an intentional relinquishment of or an abandonment of a known right or privilege. State v. McClelland, 164 N.W.2d 189, 195 (Iowa 1969).

■ In determining whether the State has sustained its burden of establishing a valid waiver by defendant of his constitutionally protected rights in the absence of an express waiver, this court examines the totality of circumstances—the attendant facts of the case—as shown in the record. This court has applied this test in determining similar factual issues. See State v. McClelland, 164 N.W.2d at 195, and State v. Williams, 182 N.W.2d at 401.

When defendant's position is pinpointed, it becomes obvious that the question of effect waiver is the crucial issue under this assignment. In contending admission · in evidence over objection of the incriminating statements was reversible error, defendant does not challenge the trustworthiness of the statements as a narration of true facts but insists the process of proving they were in fact made violated his privilege against self-incrimination under Amendment 5 of the federal constitution. In support of this position he relies on Miranda v. State of Arizona, 384 U.S. at 461–469, 86 S.Ct. at 1621–1625, 16 L.Ed.2d at 716–720, where the Court said the right to have counsel present at the interrogation is indispensable to the protection of the privilege granted by Amendment 5. Of course, these constitutional rights can be waived, defendant does not argue otherwise but maintains the State did not establish an effective waiver.

The problem is not whether Niccum made an intelligent decision in the sense it was wise or smart to admit his participation in the crime, but whether his decision was made with the full understanding he need not say anything at all and he then might consult with a lawyer if he so desired. United States v. Hall, 396 F.2d 841, 846 (4 Cir.).

After being warned of his constitutional rights, Niccum had two alternatives, he could choose between silence and speech.

The record shows that at the hearing on the motion to suppress Niccum testified without equivocation that at no time either in St. Louis or on the way back to Des

Moines with the officers was he tricked, coerced, forced or pushed into making any statement of any kind nor was he talked into making a statement. We emphasize again this was after he had been effectively warned of his right to assistance of counsel. He voluntarily elected the alternative of speech.

■ Any failure of the St. Louis authorities to appoint counsel for Niccum after arrest and before extradition did not taint the incriminating admissions made by him to Weichman and Hoffman to the extent of rendering them inadmissible. The conclusion is inescapable the State established, in accordance with standard requirements of due process, that Niccum voluntarily, knowingly and intelligently waived his right to remain silent and his right to assistance of counsel. Defendant's contention otherwise is without merit. In reaching this conclusion, we have considered all brief points urged in support of this assignment whether specifically mentioned or not.

■ In view of defendant's argument we deem it advisable to point out when a defendant introduces evidence after a denial of his motion for dismissal or directed verdict at the close of the prosecution's case, the reviewing court should consider the entire record, including defendant's evidence. United States v. Ponder, 444 F.2d 816, 822 (5 Cir.).

II. Defendant claims in his second assignment of error the court abused its discretion in not granting a change of venue, and consequently, defendant was denied a fair trial and deprived of liberty without due process contra to Amendments 6 and 14 of the Constitution of the United States and Article I, Sections 9 and 10 of the Iowa Constitution. Harnack v. District Court of Woodbury County, Iowa, 179 N.W.2d 356, 360 (Iowa 1970).

The essence of defendant's complaint, as proposed in the State's brief, is grounded on two propositions: (1) there existed at the time of trial much excitement and prejudice, adverse to defendant, caused by various newspaper, radio and television reporting; and (2) defendant was publicly associated with Anthony E. Williams, who was contemporaneously being held for the murder and kidnapping of a 10-year-old girl.

Defendant filed motion for change of venue on March 14, 1969, and supported the motion with affidavits of five disinterested individuals attesting to a heated and prejudicial atmosphere adverse to defendant. The conclusion of defendant's motion and supporting affidavits was that it would be impossible for defendant to obtain a fair trial in Polk county or contiguous counties.

On March 20, a hearing on the motion was held, during which time defendant's counsel introduced 45 exhibits, all newspaper articles. No evidence was offered by the prosecution to resist defendant's motion except to deny defendant's allegation of prejudice.

The trial court overruled defendant's motion on March 27.

Iowa's statutory machinery insures defendant in a criminal case a right to petition the court for a change in place of trial. Chapter 778, The Code. Section 778.2 recognizes that excitement and prejudice are proper bases for granting a change of venue when shown to be of such magnitude that a fair and impartial trial is unlikely to ensue. Section 778.9 sets forth the duty of the trial court to decide the motion "in the exercise of a sound discretion, * * * according to the very right of it." The statutes referred to are set out in Harnack v. District Court of Woodbury County, 179 N.W.2d at 360.

■ The movant bears the burden of showing the trial court abused its sound discretion in overruling the motion for change of venue, State v. Loney, 163 N.W.2d 378, 383 (Iowa 1968) and State v. Albers, 174 N.W.2d 649, 651 (Iowa 1970).

The discretion vested in the district judge to determine the application for change of venue, "according to the very right of it," is a judicial, not a personal discretion, and if improperly exercised it may be reviewed by this court. State v. Mooney, 10 Iowa 506, 511–512 and State v. Canada, 48 Iowa 448, 450, both cited with approval in State ex rel. Fletcher v. District Court, 213 Iowa 822, 829, 238 N.W. 290, 294. Certiorari is an appropriate remedy where, as here, an inferior tribunal is alleged to have exceeded its proper jurisdiction or otherwise acted illegally. Harnack v. District Court of Woodbury County, 179 N.W.2d at 359.

In October 1917, this court made this pronouncement bearing on sound judicial discretion as applied to applications for change of venue in State v. Meyer, 181 Iowa 440, 447–448, 164 N.W. 794, 797:

" * * * We recognize that there is discretion in the district judge in passing upon all these matters; but it is a sound judicial discretion—one that has in it a recognition of the fact that, in all well-regulated governments, the citizen is entitled to life, liberty, and the pursuit of happiness; that these he is entitled to enjoy unless forfeited by crime against the law; that one of the guarantees given the citizen, found in the Constitution of the state, is the right to a public trial by an impartial jury when accused of crime. This is a right of the citizen under the law, and it cannot be denied him. If the judicial system is to sustain itself in the confidence and respect of all right-thinking people, there must be no suspicion of unfairness in the administration of public justice. It is fundamental, under our system of government, that one charged with the commission of a public offense is presumed to be innocent until the contrary appears. He is entitled to a fair and impartial trial before a jury of his peers, uninfluenced by any bias, prejudice, or preconceived notions of his guilt. To this end, the trial should be removed from these influences, so far as it lies within the power of the court to do so."

In the case brought before us, defendant did not elect to challenge the court's ruling denying his motion for change of venue by certiorari as in Harnack v. District Court of Woodbury County, 179 N.W.2d at 359–360, in which event hearing in this court would not be de novo and findings of fact of the trial court are not reviewed further than to ascertain that they are sustained by competent, substantial evidence. Niccum chose to assert his complaint as an assignment of error requiring reversal, the procedure followed in State v. Loney, 163 N.W. 2d 378 and State v. Albers, 174 N.W.2d 649.

The Supreme Court in Sheppard v. Maxwell, 384 U.S. 333, 362–363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600, 620, a case relied on by defendant, tells us:

" * * * Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. *And appellant tribunals have the duty to make an independent evaluation of the circumstances.* Of course, there is nothing that proscribes the press from reporting events that transpire in the courtroom. But where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity." (emphasis supplied)

In making this independent evaluation of the circumstances, we bear in mind this admonition from State ex rel. Fletcher v. District Court, 213 Iowa at 831, 238 N.W. at 294:

"If the reasons given by the court for its action are clearly untenable or unrea-

sonable, if its action clearly amounts to a denial of justice, if clearly against justice or conscience, reason, and evidence it has abused its discretion. * * * [citing authorities]."

In the present case the court did not tell us its reasons for the ruling complained of. We set out the entire ruling as shown in the record and in the clerk's transcript: "Defendant's motion for change of venue is overruled."

■ We have carefully considered the newspaper exhibits offered by defendant in support of the allegations of his motion for change of venue. From such examination we cannot say that the action of the court clearly amounted to a denial of justice or was clearly against justice or conscience or reason.

Defendant has quoted from the dissent in State v. Loney, 163 N.W.2d at 383–384, as support for his position.

We conclude the court did not abuse its discretion in denying defendant's motion for new trial. This assignment cannot serve as a basis for reversal.

III. In his third assignment defendant urges the court committed reversible error by: (a) refusing to require the State to supply defendant, prior to trial, all statements and other evidence in the files of the police, sheriff and county attorney which were exculpatory as to defendant and (b) overruling defendant's motion for new trial based on the court's refusal to make the allegedly exculpatory statements on evidence available to defendant and on the theory the State suppressed exculpatory evidence thereby, in both respects, violating defendant's right of due process.

Included in the pretrial motions filed by defendant was one for discovery and production of evidence. We set out the paragraph involved in this assignment:

"5. That in order to afford this defendant due process of law * * * and to afford him the effective assistance of coun-

sel this defendant moves the Court to require the County Attorney to furnish him all statements and any other evidence contained in police reports or County Attorney's files or Sheriff's files which are exculpatory in nature."

At the hearing after some colloquy between court and counsel relating to the motion, the court entered a formal order denying the request made in the quoted paragraph but sustaining all other paragraphs and ordering production of the following physical evidence: a shoe, T-shirt, photographs, an autopsy report, medical reports, and an FBI laboratory report of fingernail scrapings, blood samples, and hair specimens, etc.

In motion for new trial defendant claimed he was denied a fair and impartial trial alleging, among other reasons:

"* * *

"(d) That the court did fail to give the defendant or his counsel sufficient opportunity prior to the trial of this cause to examine the State's evidence and statements of prospective or possible witnesses to determine if there was exculpatory statements or evidence that could be used in defendant's defense * * *."

"* * *

"(g) That the defendant was denied due process of law * * * in that the State did deliberately suppress evidence that was favorable to defendant in which evidence came to the attention of defendant after the jury trial, by defendant's examination of State's evidence and reports, said suppressed evidence being, to wit:

"* * * [Defendant lists 17 statements which primarily concern another individual earlier suspected of committing the crime] * * *."

Incorporated herein are two distinct issues. First, is the question of trial court's ruling before trial on defendant's motion for discovery and production of evidence, and second is the question of whether the

State wrongfully suppressed exculpatory evidence. Defendant urges resolution of both issues lead to the same effect: deprivation of defendant's right of due process as guaranteed by Amendment 14 of the United States Constitution and Article I, section 9 of the Iowa Constitution, thereby warranting reversal.

### Motion for Discovery and Production of Evidence

■ Defendant cites no direct authority for his contention the court erred in refusing to sustain paragraph 5. Instead he repeatedly states deliberate suppression by the State of important evidence would constitute a deprivation of due process and cannot be condoned. A prosecutor is charged with the responsibility of seeing that important evidence is not suppressed so as to deny accused a fair trial. State v. McClain, 256 Iowa 175, 184, 125 N.W.2d 764, 769, 4 A.L.R.3d 134.

Although this proposition is most certainly a cornerstone in American criminal law, it does not reach the ultimate question on our first issue. At this point we are concerned only with the correctness of the trial court's ruling on paragraph 5 as presented in defendant's motion.

■ The thrust of the court's denial, as evident from the record, is that the scope of paragraph 5 was too broad and general to be sustained.

The question of the extent of discovery permitted by a defendant in a criminal case in Iowa is carefully and thoroughy discussed in State v. Eads, 166 N.W.2d 766 (Iowa 1969). In the cited case the respondent court had allowed the accused's motion in its entirety except for the catchall paragraph asking production of all evidence exculpatory to him. In the course of the opinion, pages 768–771, we said our consideration of the problem before us was confined to the fundamental principle of fair trial which is the ultimate test against which our decision must be measured.

"* * * defendant is entitled to no more and he must have no less. However, it is not only the defendant who is entitled to a fair trial. Society, too, represented by the prosecution, has an equal right to one. * * * [citing authorities]." Many of our cases bearing on discovery are analyzed as the opinion traces history of the problem in Iowa.

Although the precise question presented by the "catchall" paragraph was not reached in State v. Eads, as it was not argued on appeal, much of what is said in discussing the problem is apposite in determining the first issue raised in this assignment. This opinion will not be extended by further quoting from the Eads opinion. However, this court has on other occasions explicitly denied defendant the right to a broad and blind "fishing expedition." State v. Kelly, 249 Iowa 1219, 1221–1222, 91 N.W.2d 562, 564; State v. Stump, 254 Iowa 1181, 1199, 119 N.W.2d 210, 220.

In State v. Kelly the court said:

"* * * The essential requirements for an order to produce documents for inspection are thus stated: 'The necessary essentials of a foundation, emphasized in that opinion, (Gordon v. United States, [344 U.S. 414, 420, 73 S.Ct. 369, 374, 97 L.Ed. 447]), and present here, are that "the demand was for production of * * * *specific documents and did not propose any broad or blind fishing expedition* among documents possessed by the Government on the chance that something impeaching might turn up. Nor was this a demand for statements taken from persons or informants not offered as witnesses." ' The emphasis was added by the court in the Jencks case in quoting from the Gordon case. See Jencks v. United States, * * * [353 U.S. 657, 666–667, 77 S.Ct. 1007, 1012, 1 L.Ed.2d 1103, 1111.]. It also appears that the demand must be for documents shown to be in existence. * * * [citing authorities]."

Bearing in mind that the fundamental principle of fair trial is the ultimate test in

determining correctness of the trial court's ruling, we conclude the trial court did not err in denying defendant's pretrial motion for discovery and production of evidence.

### Motion for New Trial

■ Defendant's motion for new trial is based on two grounds: (1) trial court erred in denying before trial paragraph 5 of defendant's motion for discovery, and (2) the prosecution wrongfully suppressed significant, exculpatory evidence. What is said in the preceding discussion should be dispositive of defendant's first contention here. Defendant's second contention, however, necessitates an examination of evidence claimed to have been suppressed by prosecution and claimed to be exculpatory in character, so as to determine the correctness of the trial court's adverse ruling based on an assessment of that particular evidence.

Defendant presents 17 items of evidence, gathered from the post-trial examination of the State's evidence and reports, which he claims were wrongfully suppressed. Thirteen of the seventeen items concern another individual suspected of the crime. The statements and reports tend to place that individual at the scene of the crime, approximately at the time of the crime, and further cast suspicion on his mental condition and behavior. The other four pieces of evidence gleaned by defendant from State's files are presented to fortify the credibility of defendant's testimony and impeach the testimony of certain State witnesses.

Some background leading to the motion for new trial is deemed advisable. In the colloquy between court and counsel at the hearing on motion for discovery, the court advised counsel it would not consider total exposure of the whole police and county attorney's files before trial since defendant's motion was too vague and general and placed too heavy a burden on the county attorney to make judgment as to what was and what was not exculpatory. However, the court informed counsel it would entertain a motion to expose those files after trial was completed. It cautioned counsel it would be a foundation for new trial if such exposure revealed anything exculpatory in nature in those files which should have been brought out by the county attorney and police in carrying out their duties under the law.

Following trial, defendant was afforded opportunity to examine the police records. Based on information derived from statements in the file, he included in motion for new trial the court's failure to grant him opportunity before trial to examine the State's evidence regarding exculpatory statements or evidence.

It is defendant's argument that with the benefit of the evidence extracted from the State's files, if available before trial, defendant could *possibly* have convinced the jury a third person actually committed the crime.

Defendant urges six brief points in support of this assignment and cites in support of his position Pyle v. State of Kansas, 317 U.S. 213, 215–216, 63 S.Ct. 177, 178, 87 L. Ed. 214, 216; Napue v. People of the State of Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217, 1221; Brady v. State of Maryland, 373 U.S. 83, 86–87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215, 218; Giles v. State of Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737. He does not suggest his imprisonment resulted from perjured testimony knowingly used by the State authorities to obtain his conviction but from the deliberate suppression by those authorities of evidence favorable to him.

Before giving further consideration to the question of the correctness of the trial court's ruling, we look at Niccum's testimony.

As stated, Niccum took the witness stand in his own defense. He admitted being at the Arnold Palmer Cleaners in Des Moines the evening of November 20 and finding Linda Boothe lying on her back in the office portion of the cleaners badly beaten with

the black sealer hose tight around her neck and her head covered with blood. Niccum said when he came into the back room Tom Logsdon was bent over Miss Boothe with a golf club shaft in his hand. He described Logsdon as being incoherent and excited. Defendant gave his version of events following his leaving the shopping center with Logsdon including disposal of Niccum's clothes, sap and the golf club shaft. He corroborated Logsdon's testimony as to their stopping at a car wash, his own attempt to remove blood from his person and their trip to Pleasantville. He also gave his explanation of the soil spots on his clothes which had been described by Logsdon as a State's witness.

Of course, there are inconsistencies in Niccum's statements when compared with those of Logsdon.

We have examined the summary of the statements involved as they appear in the record of defendant's motion for new trial. We fail to find from this inspection any statements tending to support Niccum's testimony or any which could reasonably be considered admissible for impeachment of any State witness.

In order to hold the court erred in not giving defendant a new trial on the ground urged, we would have to say, as a matter of law, the statements referred to were of such a character and nature that failure to afford defendant opportunity to inspect them before trial deprived him of a fair trial in accordance with constitutional standards. In the light of this record, we refuse to do so. The assignment cannot be sustained.

■ IV. In his fourth assignment Niccum complains of the court's refusal to give his requested instruction 1 bearing on the effect of witness Logsdon's having been granted immunity and in refusing to properly include the substance of defendant's requested instruction in the instructions as given.

Defendant's written request asked that the jury be instructed:

"There is evidence in this case that the witness, Tom Logsdon, has been granted immunity by the county attorney. Tom Logsdon's understanding of this is that he cannot be prosecuted for this crime.

"You are instructed that there is no legal authority for granting immunity to any person in a case such as this. Tom Logsdon can still be prosecuted for this crime. You are also instructed that since Tom Logsdon has been told he was being granted immunity, you can consider that fact along with all other facts and circumstances in determining the credibility of this witness and his testimony."

Before the court submitted the instructions to the jury, it overruled the request to the extent the matter was not covered in the instructions as finally submitted.

In instruction 13 the court told the jury:

"You are instructed that no provision of Iowa law authorizes a person to be granted immunity from prosecution for such felony crimes as defined in these instructions."

Defendant took no exceptions to the court's failure to give his requested instructions before they were read to the jury. In motion for new trial he urged as one ground therefor:

"1. That the court did fail to properly instruct the jury in that the court failed to either give defendant's requested instructions No. 1 and 2 or to sufficiently incorporate the content of defendant's requested instructions No. 1 and 2 in the instructions as given to the jury."

The assignment raises no new issue in this court. Its disposition is governed by State v. Schmidt, 259 Iowa 972, 979, 145 N.W.2d 631, 635–636, cert. den. 386 U.S. 965, 87 S.Ct. 1046, 18 L.Ed.2d 115 and State v. Gilmore, 181 N.W.2d 145 (Iowa 1970). See also State v. Brown, 172 N.W.

2d 152, 157–160 (Iowa 1969), where the problem is discussed at length.

The assignment presents nothing for review.

■ V. In another assignment of error Niccum claims the erroneous admission of three photographs into evidence over objection deprived him of a fair and impartial trial. Exhibits 13 and 15 were black and white photographs and exhibit 20 was a colored photograph of the partially-cleaned-up head of the victim.

Defendant also urges the admission of these exhibits as a ground for new trial.

Defendant recognizes State v. Albers, 174 N.W.2d at 657 contains our most recent holding on the question presented. He attempts to distinguish the factual situation in Albers from that in the case before us. In our opinion he fails to do so. Defendant also urges that the "trend" of granting the trial court discretion in these matters be reversed and exhibits of the type here, which he described as inflammatory, be kept from the jury or used with discretion.

The matter is fully discussed in State v. Albers where many of our cases are collected and analyzed. Under the pronouncement made there, defendant's assignment cannot be sustained.

■ VI. Defendant's remaining assignment of error relates to defendant's participation in disposing of the evidence after the crime was committed. He maintains the court erred in refusing: (1) to limit cross-examination of defendant on this matter, (2) to give defendant's requested instruction 2 bearing on the significance of defendant's assistance and (3) to limit the State's argument on this point.

In division III, supra, we have set forth a portion of Niccum's testimony in defense. He testified as to the disposal of his clothes, sap and the golf club shaft. His contention in this respect has no merit.

Defendant took no exception to the court's failure to give his requested instruction 2. The extent to which this contention was raised in motion for new trial is set out in division IV, supra. What we said there in rejecting his assertion of error as to instruction 1 is fatal to his contention here.

■ The question of limiting the State's argument is a matter left largely to the sound judicial discretion of the trial court. Under this record, we find no abuse.

Defendant's court-appointed counsel made a strenuous effort to protect his constitutional rights, none were violated and he has no complaint.

The case is therefore affirmed.

All Justices concur, except RAWLINGS and BECKER, JJ., who dissent.

RAWLINGS, Justice (dissenting).

I cannot agree with the conclusion reached in Division II of the majority opinion regarding the change of venue unsuccessfully sought by defendant in trial court, and upon that basis respectfully dissent.

In support hereof see basic rationale in Groppi v. Wisconsin, 400 U.S. 505, 91 S. Ct. 490, 27 L.Ed.2d 571; and dissent in State v. Loney, 163 N.W.2d 378, 383.

I would therefore reverse and remand with instructions to grant defendant's motion for change of venue and accord him a new trial.

BECKER, J., joins in this dissent.