STATE of Iowa, Appellee,

v.

James William **ELMORE**, Appellant.

No. 54937.

Supreme Court of Iowa.

Oct. 18, 1972.

Thomas C. Younggren, of Norman & Younggren, Keokuk, for appellant.

Richard C. Turner, Atty. Gen., Richard N. Winders, Asst. Atty. Gen., and Robert B. Dickey, County Atty., Keokuk, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REES, JJ.

REES, Justice.

Defendant, James William Elmore, was charged by county attorney's information with the crime of robbery with aggravation in violation of section 711.2 of the Code, 1971. Information charging the crime of robbery was filed on February 17, 1971. On February 26 a county attorney's true information was filed accusing the defendant Elmore of being an habitual criminal, he having been thrice convicted of a felony; one of the felonies defendant was charged with having been convicted being the robbery allegedly committed on February 11, which crime was charged in the information first filed on February 17. Trial was had to a jury on the offense first charged without reference to the habitual criminal charge, and after the jury had returned with its verdict of guilty, the same jury was again charged with respect

to the habitual criminal matter; thereafter, the jury retired, deliberated and returned its findings that the defendant had been twice before convicted of a felony. Defendant was sentenced and now appeals. We affirm the trial court.

The Grand Theatre in Keokuk was robbed by an armed man on February 11, 1971 and very shortly thereafter the defendant was arrested. When he first appeared in court for arraignment, it became apparent the attorney who accompanied him was not in a position to represent him, and his present counsel who represented him on appeal and in the trial of the case later appeared and represented him at the arraignment, at which time he entered a plea of not guilty.

Subsequent to the entry of the plea of not guilty, defendant filed his motion for change of venue upon the ground that excitement and prejudice against the defendant engendered by a constant barrage of news items and special articles appearing in the *Keokuk Daily Gate City*, a daily paper published in Keokuk, and being broadcast over a local radio station, had made it inconceivable that the defendant could receive a fair trial in Lee County. He further asserted in his motion that, based on all the circumstances of the case, a bias existed in the community, and that the citizenry of the community was prejudiced against the defendant because of such bias and by virtue of the newspaper and radio publicity. Defendant's affidavit and the affidavits of three disinterested citizens of Keokuk were attached to the motion for change of venue.

A resistance to the motion was filed, denying all of the allegations and assertions of the defendant's motion, to which were appended affidavits of four disinterested citizens of Lee County.

Hearing was had on March 5 on the petition for change of venue, and at that time the managing editor of the newspaper and the news director of the radio station were called by the defendant to testify.

The general manager of the radio station and the city editor of the newspaper testified on behalf of the State.

The managing editor of the newspaper testified only to the extent of coverage or circulation of his newspaper in Lee County. The news director of the radio station testified to his impressions of the saturation of his station in the area of Lee County and as to the number of times the stories concerning the defendant were broadcast over his station. The general manager of the radio station was interrogated also as to the coverage of his station in Lee County. The city editor of the newspaper, who had in fact written the articles complained of by defendant, was interrogated as to the source of her information concerning the defendant's prior criminal record.

The articles in the newspaper which defendant deemed offensive and upon which he based his motion for change of venue appeared in the issues of February 12, 17, 22 and 26, 1971. Trial of the case began on the morning of March 24, 1971.

Defendant asserts two errors upon which he relies for reversal:

(1) Trial court erred in overruling defendant's request for a change of venue and the court's refusal to grant a change of venue was an abuse of discretion since the defendant was thereby deprived of liberty without due process of law and of a fair trial in violation of the Iowa statutes and the United States Constitution.

(2) Trial court erred in refusing defendant's request that *voir dire* examination of prospective jurors be conducted individually beyond the hearing of other prospective jurors, and in limiting the questioning of the jurors as to what they had heard or read concerning defendant and the claimed commission of a public offense, since such rulings deprived the defendant of liberty without due process of law and of a fair trial in violation of the United States Constitution.

I. In its ruling on defendant's motion for change of venue the court found the newspaper articles and the radio broadcasts rather thoroughly discussed the incident of the robbery out of which the charges were laid against the defendant, and that one small portion of the news article made reference to a parole violation as the reason defendant was not at liberty on bond. The court found that in all other respects the articles appeared to be simply statements of fact, and concluded after an examination of the newspaper accounts and hearing the testimony offered, that there was an insufficient showing of excitement and prejudice in the community against the defendant so as to prevent his receiving a fair trial. The court concluded that most of the testimony at the hearing and the affidavits dealt with the facts as expressed and that there was really nothing in the record from which the court could conclude that there was at the time of the hearing prejudice in the community against the defendant which would deny him a fair trial.

The American Bar Association Minimum Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press, section 3.2(c) (1968), enunciates the principle applicable to cases such as the matter before us:

"A motion for change of venue or continuance shall be granted whenever it is determined that because of the dissemination of potentially prejudicial material, there is a reasonable likelihood that in the absence of such relief, a fair trial cannot be had. This determination may be based on such evidence as qualified public opinion surveys or opinion testimony offered by individuals, or on the court's own evaluation of the nature, frequency, and timing of the material involved. A showing of actual prejudice shall not be required."

The question for our determination here is whether a reasonable likelihood existed that a fair trial could not be had because of the dissemination of potentially prejudicial material. We are required to make "an independent evaluation of the circumstances" on change of venue issues in criminal cases involving the right to an impartial jury, i.e., our review is de novo whether the question comes to us on certiorari in advance of trial, or on direct appeal following judgment. Sheppard v. Maxwell, 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600, 620; State v. Niccum (Iowa 1971), 190 N.W.2d 815, 824; Pollard v. District Court (Iowa 1972), 200 N.W.2d 519. See Maine v. Superior Court, 68 Cal.2d 375, 66 Cal.Rptr. 724, 728–730, 438 P.2d 372, 376–378. To this extent only our pronouncement in Harnack v. District Court (Iowa 1970), 179 N.W.2d 356, is no longer controlling.

We have considered the affidavits appended to defendant's motion for change of venue and the exhibits offered by defendant in support of the allegations of his motion. In conjunction with our obligation to make an independent evaluation of the circumstances, and from such examination we are unable to say here the action of trial court amounted clearly to a denial of justice or was clearly against justice or conscience or reason.

Defendant, in support of his proposition, cites a dissent in State v. Loney (Iowa), 163 N.W.2d 378, 383–384. At page 384 we find:

"I would hold trial courts, confronted with a motion under section 778.9, Code, 1966, should be required to distinctly find nothing less than that any pretrial publicity will justify a change of venue unless it clearly appears there is no reasonable likelihood the news coverage will serve to deny an accused a fair and impartial trial." (citing Estes v. Texas, 381 U.S. 532, 542–543, 85 S.Ct. 1628, 1632–1633, 14 L.Ed.2d 543.)

We conclude trial court directly and distinctly found that the pretrial publicity raised no reasonable likelihood such news coverage would serve to deny the accused

in this case a fair and impartial trial. We conclude the court did not err in overruling defendant's motion for a change of venue in this case.

II. In his second assignment of error, defendant asserts trial court erred in refusing defendant's request that the *voir dire* examination of prospective jurors be conducted individually beyond the hearing of other jurors, and in limiting the questioning of what a juror had read or heard since such ruling deprived the defendant of liberty without due process of law and of a fair trial in violation of the Fourteenth Amendment of the United States Constitution.

At the commencement of trial, defendant's counsel requested the court to adopt a *voir dire* procedure under which prospective jurors should be brought into the courtroom one by one and examined individually outside of the presence of other jurors.

■ The trial court ruled on defendant's request that jurors be examined on the *voir dire* individually, but would be examined in the normal and customary procedure in that all jurors would be present in the courtroom and might be examined as a panel collectively and individually. The court, however, imposed on counsel during the *voir dire* examination a restriction on asking prospective jurors to repeat what they had read in newspapers or heard over the radio. The court expressed the view in its ruling that the real issue was whether any of the prospective jurors had formed or expressed an opinion based on what they had read in the newspapers or heard over the radio which would prevent them from being fair and impartial jurors. In its ruling the court indicated the selection of the jury panel would be conducted in compliance with section 779.1, The Code, 1971.

Section 779.1, The Code, 1971, merely provides the rules for drawing a jury in a criminal case shall be the same as those provided for in rule 187, Rules of Civil Procedure.

The examination of the prospective jurors was reported and the transcript of the *voir dire* examination is before us. Each juror was asked whether he had read the articles appearing in the newspaper or had heard the news accounts over the radio. The newspaper was identified by name, and the radio station was identified by call letters in the *voir dire* examination of the jury. Each prospective juror was asked whether he had formed or expressed an opinion as to the guilt or innocence of the defendant based upon any news accounts he had heard or read. Some jurors indicated a bias and were excused for cause; some of them, however, were excused because of personal acquaintanceship with the defendant or members of his family.

"The mere fact that a juror has seen or heard pretrial publicity is not necessarily a ground for disqualification, and a juror will not be held disqualified if he satisfies the court that he can and will be impartial depsite his having been exposed to pretrial publicity." 47 Am.Jur.2d, Jury, § 303, p. 877; State v. Giudice, 170 Iowa 731, 737, 153 N.W. 336, 338.

"A wide discretion must be left to the judgment of the trial court in dealing with situations of this kind when they arise, and we are not disposed to reverse unless it is apparent that such discretion has been abused and that prejudice has resulted." Holub v. Fitzgerald, 214 Iowa 857, 859, 243 N.W. 575, 576.

In State v. Albers (Iowa 1970), 174 N. W.2d 649, 652, this court said, "There is merit in the American Bar Standard, 54 A.B.A. Journal 349, that under some circumstances each juror should be examined out of the presence of other jurors, this has never been the practice in Iowa * * *."

"It is the general rule, as enunciated by this court, that a wide latitude is necessarily allowed counsel in examining the jurors

for the purpose of advising him as to how to exercise his peremptory challenges, and that the matter must of necessity be left largely to the sound discretion of the trial court, and that in the absence of bad faith on the part of counsel, or a manifest abuse of discretion on the part of the trial court, we will not interfere." Raines v. Wilson, 213 Iowa 1251, 1253, 239 N.W. 36, 37, and cases there cited.

In *Raines* the court went on to say (quoting from Simons v. Mason City & Fort Dodge Railroad Company, 128 Iowa 139, 103 N.W. 129, 133): "A wide latitude is necessarily allowed counsel in examining jurors for this purpose (advising him as to how to exercise his peremptory challenges), and must, of necessity, be left to the sound discretion of the trial court. The exact situation cannot be reproduced in cold type, and many things must be taken into account by the trial court which cannot be made of record or considered here. Consequently, our rule has been not to interfere in such matters save where there has been a want of good faith on the part of counsel, or a manifest abuse of discretion on the part of the trial court." Raines v. Wilson, *supra*, 239 N.W. 37.

Defendant complains trial court limited his *voir dire* examination unduly by not permitting him to inquire of each individual juror as to what he or she had heard on the radio or read in the newspaper. Such inquiry would have permitted the individual prospective juror to interpret what he had heard or read with the possibility of improper emphasis or wrongful interpretation on the matter he had read in the newspaper or heard on the radio to the prejudice of the defendant.

We conclude the trial court did not abuse its discretion in ordering the conduct of the *voir dire* examination of prospective jurors as it did, nor did it err in limiting the *voir dire* examination as the record indicates.

We perceive no reversible error in this case and affirm the trial court.

Affirmed.