**Phyllis POLLARD, Petitioner,**

**v.**

**DISTRICT COURT OF WOODBURY COUNTY, Iowa, Hon. C. F. Stilwill, Presiding, Respondent.**

**No. 55394.**

Supreme Court of Iowa.

Sept. 19, 1972.

P. D. Furlong, Sioux City, for petitioner.

Zigmund Chwirka, Woodbury County Atty., and Patrick J. Birmingham, Asst. Woodbury County Atty., for respondent.

UHLENHOPP, Justice.

The question before us is whether a motion for change of venue in an embezzlement prosecution should have been sustained.

The exhibits show that some Sioux City residents suspected irregularities in the city's accounts. The accounts were period-

ically audited by an accounting firm, but those residents requested an audit by the Iowa State Auditor. The city administration evidently regarded this as unnecessary expense. The State Auditor undertook the task and audited the books for 1970 and as far into 1971 as figures were available, including the city's airport operations. The whole matter was attended by extensive publicity in the local news media.

The subsequent audit report contained some recommendations for minor administrative improvements. But with one exception, the audit disclosed no wrongdoing of the kind its promoters apparently suspected. The exception was an alleged shortage of about $2,560 at the airport. Phyllis Pollard, secretary to the airport manager, was alleged to be responsible for the shortage, and in due course she was charged with embezzlement.

The public release of the audit report received a large amount of publicity in the press and by radio and television, directed mainly to the audit itself and, as one reporter described it, to "the byplay between the auditor and the city council." The alleged embezzlement by Mrs. Pollard also received publicity, although not as much.

Mrs. Pollard moved for a change of venue of the embezzlement prosecution to another county. Respondent Judge heard testimony at length in support of opposition to the motion and examined the numerous exhibits regarding the publicity. He rendered an order holding that while considerable feeling existed as to the making of the audit, neither excitement nor prejudice against Mrs. Pollard was shown. He therefore overruled her motion. We granted certiorari.

■ When a change of venue is asked, the accused may seek to establish prejudice in fact, or he may try to show publication of material which is so potentially prejudicial that prejudice must be presumed. State v. Davis, 196 N.W.2d 885 (Iowa).

The present case is in the latter category. The principle applicable to such cases is stated thus in A.B.A. Minimum Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press, § 3.2(c) (1968):

> A motion for change of venue or continuance shall be granted whenever it is determined that because of the dissemination of potentially prejudicial material, there is a reasonable likelihood that in the absence of such relief, a fair trial cannot be had. This determination may be based on such evidence as qualified public opinion surveys or opinion testimony offered by individuals, or on the court's own evaluation of the nature, frequency, and timing of the material involved. A showing of actual prejudice shall not be required.

See Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600; Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543; Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663.

■ In the application of the quoted standard, the key question is whether "a reasonable likelihood" exists that "a fair trial cannot be had" because of the dissemination of "potentially prejudicial material." In these venue cases involving the right to an impartial jury, due process requires us to make "an independent evaluation of the circumstances." Sheppard v. Maxwell, 384 U.S. at 362, 86 S.Ct. at 1522, 16 L.Ed. 2d at 620. If such evaluation discloses lack of due process in a denial of a change of venue, illegality is involved.

Our examination of the evidence leads us to agree with the trial court to this extent: had the only publicity been the stories about Mrs. Pollard's alleged embezzlement and the criminal proceedings which followed, the case would have been similar to State v. Davis, 196 N.W.2d 885 (Iowa). But the case is considerably different.

The area was flooded with publicity about the audit, the whole matter received much public attention, and the audit ultimately pointed to Mrs. Pollard as an alleged offender. We thus disagree with the trial court to this extent: we cannot realistically isolate Mrs. Pollard and her publicity from the audit and its publicity. We fear that in the public mind, Mrs. Pollard's alleged part in the whole affair would not be separate; it would be an integral part, "a play within a play."

The prosecutor is right that Mrs. Pollard did not demonstrate conclusively she cannot receive a fair trial. But that is not the test we apply. When the spotlight's glare comes to rest on a certain individual in a matter of large public interest involving widespread and intensive publicity of a prejudicial nature, the test is whether a "reasonable likelihood" exists that the voir dire jury examination or a continuance will not be sufficient to allow a fair trial. We think such reasonable likelihood exists here and that the motion should have been sustained.

Writ sustained.

All Justices concur except LeGRAND, J., MOORE, C. J., and MASON, J., who concur specially.

LeGRAND, Justice (concurring specially).

I concur in the result but disagree with the manner in which the majority arrives at its result.

This is a certiorari action to test the legality of the trial court's denial of Mrs. Pollard's petition for a change of venue. We have a long and uninterrupted—until now—line of cases establishing the rule that our review in certiorari is not de novo. It is limited to deciding if there is "competent and substantial evidence" to support the findings made. Only questions of law are presented. In the interest of brevity I cite only one of our recent decisions on the point. Harnack v. District Court of Woodbury County, 179 N.W.2d 356, 359 (Iowa 1970). Many others are readily available.

Harnack, too, presented a change of venue issue; and Harnack was a unanimous opinion of the eight participating justices. Yet the majority now flys directly in the face of Harnack by adopting a de novo rule for review in certiorari. It does so by what it euphemistically calls "an independent evaluation of the facts." I take that to be a de novo review. At least it does *not* adhere to the principle of competent and substantial evidence.

If we are to take such a step, I consider it our duty to say so. The majority does not even give passing mention to Harnack. It simply sweeps it under the rug. This cavalier treatment is justified by the argument that Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, and Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 demand it. Yet our Harnack case came long *after* those decisions. Apparently at that time this court felt no compulsion to upset our traditional certiorari procedure because of them.

If Harnack is wrong, we should say so. If it is distinguishable, we should say *why*. Candor demands no less than this.

Faced now with Harnack, which is apparently still strong and vital, and with today's contrary opinion, trial judges and lawyers will indeed be hard put to know the rules by which these matters are to be tried and appealed. We should not leave them in this legal morass, particularly since it is one of our own creation.

MOORE, C. J., and MASON, J., join in this special concurrence.