STATE of Iowa, Appellee,

v.

Michael Alan PELELO, Appellant.

No. 58908.

Supreme Court of Iowa.

Nov. 17, 1976.

Rehearing Denied Jan. 14, 1977.

Mayer Kanter, Sioux City, for appellant.

Richard C. Turner, Atty. Gen., David L. Brown and Jim P. Robbins, Asst. Attys. Gen., and Michael Dull, County Atty., for appellee.

McCORMICK, Justice.

Defendant appeals his conviction and sentence for delivery of marijuana in violation of § 204.401(1)(a), The Code. He contends the trial court erred in overruling his pretrial motion for change of venue, in denying him the right to present evidence in support of his challenge to the jury panel, in overruling his exception to the court's entrapment instruction, in placing the burden of proof on him in the accommodation hearing, and in failing to rule on his motion in arrest of judgment. We affirm the trial court.

The charge was based on the alleged sale by defendant of 12 bags containing about three-fourths of a pound of marijuana to a state undercover agent in LeMars in the evening of December 2, 1974, for $170. The sale was arranged with the help of a paid informant. At trial, defendant admitted the sale and relied on a defense of entrapment. After the jury found him guilty of the offense, he requested an accommodation hearing which was subsequently held. The trial court found the transaction was not an accommodation sale. Defendant was sentenced, and this appeal followed.

I. *The motion for change of venue.* Defendant moved before trial for change of venue on the ground he could not receive a fair trial in Plymouth County because of inflammatory pretrial publicity. His motion was supported by an affidavit signed by three persons.

The affidavit referred to allegedly adverse and prejudicial publicity in the LeMars Daily Sentinel, including a front page news story, an unsigned letter to the editor, and editorial articles. In resisting the motion, the State denied that the newspaper publicity was inflammatory and of prejudicial effect.

Defendant subsequently amended his motion by attaching the four newspaper items which he alleged had prejudiced his right to fair trial. At the hearing testimony was received from defendant, the editor of the Sentinel, and its publisher, and the four items were received as exhibits. After hearing the evidence, the trial court overruled the motion.

■ We review the evidence *de novo* to determine whether the trial court abused its discretion in holding that defendant failed to demonstrate a reasonable likelihood he would not receive a fair trial in Plymouth County. *State v. Dague*, 206 N.W.2d 93, 95 (Iowa 1973); *Lloyd v. District Court of Scott County*, 201 N.W.2d 720 (Iowa 1972).

The LeMars Sentinel is a daily newspaper in LeMars with a circulation of about 5,000. The population of Plymouth County is about 24,000. On June 26, 1976, the paper carried a front page story with a headline in red link, proclaiming "Illegal drugs sold in parking lots: Prices for packets from $90 to $200." The story reported that a number of recent drug arrests had occurred in LeMars, naming six persons including defendant who had been arrested the day before. Then, in order to illustrate what it described as the typical pattern involved in local drug sales, the article quoted minutes of testimony attached to the county attorney's information in one of the recent cases, deleting names "in order not to damage the court cases." The minutes were not from defendant's case.

Almost one month later, the newspaper featured an editorial entitled, "Deferred sentence . . . there's no better deal", in which a sarcastic attack was made on the use of deferred sentences in criminal cases. After this, on a date not shown, an unsigned letter to the editor appeared in the paper contending drug offenders were being treated leniently and urging harsher dispositions. Later, on August 28, 1975, the newspaper printed a cartoon captioned, "Fight crime! Don't let your son become a criminal defense lawyer."

The trial court overruled the motion for change of venue on September 5, 1975. Trial commenced September 15, 1975. No record was made of voir dire.

■ Our evaluation of the allegedly prejudicial publicity leads us to the same conclusion as the trial court. Defendant's name appeared in only the article of June 26, published almost three months before the case was tried. Although the article left little doubt regarding the newspaper's view of the guilt of those named, it was not so inflammatory and pervasive as to make it likely defendant could not have a fair trial three months later. The other newspaper items were rather commonplace generalized attacks on the courts and our system of criminal justice. This publicity did not establish a reasonable likelihood defendant could not have a fair trial in Plymouth County.

We hold the trial court did not err in overruling defendant's motion for change of venue.

■ II. *The challenge to the jury panel.* Defendant sought to object to the jury panel before voir dire. The trial court ruled his challenge could be made at the first convenient recess during voir dire. The challenge was actually made after the trial jury was impaneled. Defendant alleged that young persons had been systematically excluded from the panel. He asserted the panel had been drawn from the voting list in the last general election and thus did not

include those young persons less than 18 years old on election day who attained that age subsequently. He presented no evidence in support of the challenge but asked the trial court to take judicial notice of the fact the panel was drawn from the voting list.

The trial court overruled the challenge. Defendant, now represented by different counsel, contends the court erred in refusing to permit him to present evidence in support of his challenge. He relies on the principles explained in *State v. Staker*, 220 N.W.2d 613, 615 (Iowa 1974); see rule 187(d), Rules of Civil Procedure. However, he does not argue the merits of the challenge.

The record does not support defendant's present contention. His trial counsel did not at any time request an opportunity to present evidence. Although the trial court refused to hear arguments on the challenge, the court did not refuse defendant the opportunity to make his record. We find no merit in defendant's present contention that he was denied the right to present evidence.

Regarding the merits of his challenge based on the record made, see *State v. Williams*, 243 N.W.2d 658, 661–662 (Iowa 1976); *State v. Knutson*, 220 N.W.2d 575, 577 (Iowa 1974).

■ III. *The entrapment instruction.* Defendant took timely exception to the court's proposed instruction on his defense of entrapment. The court's instruction contained the language of uniform jury instruction No. 501.21 (1975). Defendant contended the uniform instruction did not meet the problem addressed in *State v. Deanda*, 218 N.W.2d 649, 650–651 (Iowa 1974), where this court held an earlier uniform instruction did not conform with the newly-adopted objective entrapment standard of *State v. Mullen*, 216 N.W.2d 375 (Iowa 1974).

In criticizing the previous uniform instruction the court in *Deanda* said:

"Defendant is right in insisting the instruction was erroneous because it was squarely bottomed on the subjective test

we later rejected in *State v. Mullen*. There is no hint in the instruction the jury should consider whether the police actions were so reprehensible that, as a matter of public policy, a conviction should not be tolerated. The uniform instruction ignores the factual evaluation to be undertaken on a case by case basis of possible ' * * * prohibited governmental activity [which] might include extreme pleas of desperate illness, appeals based primarily on sympathy, pity or close personal friendship, and offers of inordinate sums of money. * * *' 216 N.W.2d at 383. Most of all, the uniform instruction erroneously fails to focus on the crucial question of what is likely to cause normally law-abiding persons to commit the offense. The giving of the instruction was error." 218 N.W.2d at 651.

In the present case the trial court responded to defendant's exception by adding language to its proposed instruction. In its final form, the instruction was as follows, with the added language italicized:

The defendant asserts that he was the victim of entrapment as to the crime charged. The State has the burden of disproving entrapment by the evidence beyond a reasonable doubt and if it fails to sustain its burden, the defendant must be acquitted.

Entrapment occurs when a law enforcement agent induces the commission of an offense using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

In applying this instruction, you should consider the course of conduct between the agent and the defendant. *You should consider whether the police actions were so reprehensible that as a matter of public policy a conviction should not be tolerated. Such actions might include extreme pleas of desperate illness, appeals based primarily on sympathy, pity or close personal friendship, and offers of*

*inordinate sums of money.* The transaction leading up to the offense, the interaction between the agent and the defendant and the defendant's response to conduct of the agent are all to be considered by you in judging what the effect of the agent's conduct would be on a normally law-abiding person.

Therefore, it is your duty to acquit the defendant if you find that the agent conducted himself in a manner which would induce a normally law-abiding person to commit the offense charged. However, if you find that such conduct would not be likely to induce a normally law-abiding person to commit the offense alleged, then the state has sustained the burden imposed upon it and has disproved the defense of entrapment.

Defendant excepted to the court's use of the word "reprehensible" in the amended instruction, asserting it required the jury to find before acquitting a defendant not only entrapment under the objective standard but that the police should be punished for such entrapment. The trial court overruled the exception. Defendant assigns the court's ruling as error.

In criticizing the subjective standard of entrapment in *Mullen,* we said, "It fails to confront the real concern whether the police actions were so reprehensible under the circumstances that a conviction, as a matter of public policy, should not be tolerated." 216 N.W.2d at 381. This was a reason for adopting the objective standard; it was not a statement of the new standard. The subsequent similar language in *Deanda* was intended to point out the flaw which existed in the former uniform instruction on the subjective standard of entrapment. The deficiency in the subjective standard is overcome by the objective standard. The objective standard is that entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Although this standard focuses on police conduct so that acquittals based on entrapment have the effect of identifying reprehensible police conduct, nothing in the stan-

dard requires that the jury be told it must consider in applying the standard, "whether the police actions were so reprehensible that, as a matter of public policy, a conviction should not be tolerated". This principle is an explanation for the standard but not part of its definition.

■ We believe the trial court should not have added the additional language to the instruction, but we do not think adding the language was reversible error. Defendant invited the major part of the change by his exception to the instruction as originally proposed. Further, although the additional language required the jury to consider whether the police conduct was reprehensible, it equated reprehensible police conduct with examples of conduct which we have held a jury may find would induce a normally law-abiding person to commit an offense. The court did not thereby change the objective standard which it twice defined elsewhere in the instruction, nor did the court thereby condition acquittal for entrapment on a showing that the police deserved punishment. The instruction must be viewed as a whole and not piecemeal. *State v. Robinette,* 216 N.W.2d 317 (Iowa 1974). As a whole, it accurately informed the jury of the objective standard of entrapment. In context, the language added by the court did not diminish the State's burden under that standard.

We find no merit in this assignment of error.

■ IV. *The accommodation issue.* After he was found guilty by the jury, defendant requested an accommodation hearing which was subsequently held. The trial court placed the burden of proof on defendant to show he sold the marijuana as an accommodation. Defendant did not object to this procedure until he filed a motion in arrest of judgment after the hearing was concluded. In order to preserve any alleged error in a ruling on the constitutionality of a statute, the party challenging the statute must do so at the earliest available opportunity in the progress of the case. *State v. Ritchison,* 223 N.W.2d 207, 214 (Iowa 1974);

see *State v. LePard,* 240 N.W.2d 642, 644 (Iowa 1976). Defendant's challenge was made too late in the present case. See *State v. Everhart,* 243 N.W.2d 574 (Iowa 1976). Error was not preserved.

■ V. *The motion in arrest of judgment.* After defendant was sentenced he moved for arrest of judgment. The motion was still pending at the time he filed his notice of appeal to this court. He contends the trial court erred in not ruling on the motion. However, a party cannot predicate error on a trial court's failure to rule when he has made no request or demand for ruling. *State v. Schiernbeck,* 203 N.W.2d 546 (Iowa 1973). No such request or demand was made here. No error was preserved.

We find no reversible error.

AFFIRMED.

MOORE, C. J., and LeGRAND, REES and UHLENHOPP, JJ., concur.

RAWLINGS, MASON, REYNOLDSON and HARRIS, JJ., dissent.

RAWLINGS, Justice (dissenting).

Being unable to agree with the reasoning employed and conclusion reached in Division I of the majority opinion, I respectfully dissent.

The basic principle here involved is an accused's right to a fair trial. See *Spencer v. State of Texas,* 385 U.S. 554, 563–564, 87 S.Ct. 648, 653, 17 L.Ed.2d 606 (1967).

The majority would apparently require that a defendant show widespread identifiable prejudice in the community before trial court's refusal to allow a change of venue could be termed an abuse of discretion. But see *Estes v. State of Texas,* 381 U.S. 532, 541–545, 85 S.Ct. 1628, 1632–1634, 14 L.Ed.2d 543 (1965).

In keeping with *Estes,* this court has specifically held a showing of actual prejudice resulting from adverse publicity is not a prerequisite to a change of venue. See *Pollard v. District Court of Woodbury County,* 200 N.W.2d 519, 520 (Iowa 1972). We there adopted ABA Standards Relating to Fair Trial and Free Press, § 3.2(c) (Approved Draft 1968), which says:

"A motion for change of venue or continuance shall be granted whenever it is determined that because of the dissemination of potentially prejudicial material, there is a reasonable likelihood that in the absence of such relief, a fair trial cannot be had. This determination may be based on such evidence as qualified public opinion surveys or opinion testimony offered by individuals, or on the court's own evaluation of the nature, frequency, and timing of the material involved. *A showing of actual prejudice shall not be required.*" (emphasis supplied).

The rationale underlying this principle is self-evident; it is not usually possible for a defendant to prove jurors have read published reports or heard anything of a prejudicial nature. Often they will deny such knowledge upon being questioned or at most admit having read something about a given case, but assert such will not bear upon or influence their decision. See *Commonwealth v. Stouffer,* 225 Pa.Super. 30, 307 A.2d 415, 418 (1973) (Hoffman, J., dissenting).

The United States Supreme Court has recognized the impropriety of placing the burden upon a venue change movant to demonstrate actual prejudice. See *Estes v. State of Texas,* 381 U.S. at 542–543, 85 S.Ct. at 1632. For an informative discussion of the Supreme Court's evolving concept of due process as here involved see *United States ex rel. Doggett v. Yeager,* 472 F.2d 229, 236–239 (3d Cir. 1973).

Admittedly, defendant in this case does not present a challenge foundationed on constitutional grounds. The issue must therefore be resolved upon the basis of our change of venue statutes, Code ch. 778. In light of Code § 793.18, however, the reasoning which underlies due process mandates should not be blithely ignored.

The key question is whether a reasonable likelihood exists that a fair trial cannot be had because potentially prejudicial material

has been disseminated. See *Pollard v. District Court of Woodbury County,* 200 N.W.2d at 520; cf. *Commonwealth v. Stouffer,* 307 A.2d at 421–422. As the majority notes, we are required, on review, to make an independent evaluation of all the circumstances.

Defendant here appropriately moved for a change of venue supported by affidavits of three persons. His petition, in the statutorily prescribed form and in conformity with the statute, made out a prima facie case which was uncontroverted. Ordinarily this alone would suffice as a basis for granting the redress sought. See *State v. Hephner,* 161 N.W.2d 714, 716 (Iowa 1968). But see *State v. Loney,* 163 N.W.2d 378, 383 (Iowa 1968), holding, in effect, the failure of either party to resist a venue change petition does not negate trial court's discretion to determine under the record made, the necessity or advisability of a transfer for trial. Accord, *State v. Dague,* 206 N.W.2d 93, 94 (Iowa 1973).

The LeMars Sentinel, only daily in Plymouth County (population about 25,000), has a circulation of approximately 5000. The June 26, 1975 publication carried a front page article, *under red ink headline,* reporting six named people, including this defendant, had been arrested in LeMars the day before on drug charges. The headline boldly proclaimed: "Illegal drugs sold in parking lots: Prices for packets from $90 to $200." There followed a facially authentic report setting forth the "specifics as to how the sale of narcotics come about in each minute detail". Conspicuously absent was any attempt to tell the reader these "details" were mere allegations by claimed witnesses in support of the county attorney's information. For example, in the third paragraph the writer states without qualification: "Affidavits contained in six of the eight cases in which drug arrests were made in LeMars Monday show drugs were sold to special agents for $840."

Although the aforesaid information-minutes did not specifically relate to defendant's case, neither was the identity thereof given. The editor allegedly deleted this recognition "in order not to damage the court cases". Despite this asserted caution the names of all arrested were listed. Moreover, the Sentinel story contained this rousing statement:

"The seriousness of the drug abuse situation in LeMars cannot be disputed. Availability of narcotic drugs for indiscriminate use has been common knowledge for several years.

"Intervention by an Iowa narcotics agent has stopped this latest series of drug sales by LeMars and area youths and provided the public with facts and details of how drugs are sold."

The majority concedes the foregoing left little doubt regarding the newspaper's view as to the guilt of those named. Additionally, the above article was not confined to the editorial page nor labeled "commentary". It was prominent front-page news. Cf. *United States v. Coast of Maine Lobster Co., Inc.,* 538 F.2d 899, 902 (1st Cir. 1976).

Admittedly, an unsigned letter to the editor, a deferred sentence editorial and cartoon, intermittently carried in the Sentinel prior to trial, all as described in the majority opinion, were generalized criticisms of the courts and our criminal justice system. But the cumulative effect thereof cannot be brushed aside. See Dunahoo, "The Scope of Judicial Discretion in the Iowa Criminal Law Process", 58 Iowa L.Rev. 1023, 1049 (1973).

Surely the aforesaid publications were more than ordinary reporting which always accompany any event such as this. Illustratively the Sentinel editor testified the paper had never before printed minute details of statements attached to a county attorney's information. And the publisher admitted it was the first time an article headline on a criminal case had been emblazoned in red print. Then too, the material contained in publications subsequent to the above described June 26, 1975 issue were so closely related in both time and substance as to leave no doubt regarding their correlative aim or purpose.

Briefly stated, the involved editions of the LeMars Daily Sentinel must be charac-

terized as nothing less than an indelibly imprinted community crusade predicated on a news media pretrial determination that all named, including this defendant, were guilty and must be subjected to penal servitude. Surely this jeopardized if not obliterated defendant's right to a fair trial in Plymouth County.

The majority seemingly infers a change of venue can be properly denied even where, as here, there is local publication of potentially prejudicial material if the presiding judge merely assumes no reasonable likelihood exists an accused could not get a fair trial because of such publicity.

It still remains the above view places upon an accused a burden which cannot be met, i. e., establish actual prejudice. This, I submit, is a violation of fair trial rights. If there exists no reasonable likelihood the news coverage will serve to deny an accused a fair and impartial trial, then the burden to so show should be upon the State and such showing is here conspicuously absent.

In this case, for example, the State might have produced evidence disclosing any potential prejudice vanished with the passage of time. Or it could have requested a reported voir dire examination of the jury in order to, arguendo, support its view. See *State v. Davis,* 196 N.W.2d 885, 889 (Iowa 1972). But see ABA Standards Relating to Fair Trial and Free Press, § 3.2(c)(d) and Commentary at 126–127 (Approved Draft 1968).

No such voir dire is instantly shown of record. On the other hand defendant, as aforesaid, submitted three affidavits supporting his prejudice contention. The State merely denied the allegation. Defendant lost. And, upon the basis of the conclusion here reached by the majority, the same result may be expected to hereafter obtain every time an accused unsuccessfully seeks a place of trial change because of potential community prejudice. This is to me inherently unjust.

' We need not, indeed cannot, proscribe the press from *properly* reporting on criminal events and trials. On the other hand this court has declared:

" ' *   *   * It is fundamental, under our system of government, that one charged with the commission of a public offense is presumed to be innocent until the contrary appears. He is entitled to a fair and impartial trial before a jury of his peers, uninfluenced by any bias, prejudice, or preconceived notions of his guilt. To this end, the trial should be removed from these influences, so far as it lies within the power of the court to do so.' " *State v. Niccum,* 190 N.W.2d 815, 824 (Iowa 1971).

Good faith on the part of trial court and newspaper personnel is neither here in question nor relevant.

By reason of the above described article carried under a garish red headline, and ongoing pretrial provocative publicity this case was, in my view, so patently fraught with potential prejudice to the accused as to obviate any exercise of discretion by trial court. And if such discretionary right did exist, I respectfully submit it was abused. In either event a reversal is dictated.

I would attendantly remand for a new trial with instructions to prefatorily grant defendant's requested change of venue.

MASON, REYNOLDSON and HARRIS, JJ., join in this dissent.