**STATE of Iowa, Appellee,**

v.

**Merle Lee POWELL, Appellant.**

**No. 58857.**

Supreme Court of Iowa.

July 29, 1977.

Philip F. Miller, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Richard H. Doyle, IV, Asst. Atty. Gen., Dan L. Johnston, County Atty., and Francis X. Sarcone, Asst. County Atty., for appellee.

Heard before MOORE, C. J., and MASON, REES, UHLENHOPP, and HARRIS, JJ.

HARRIS, Justice.

The defendant appeals separate convictions reached after a consolidated trial on two separate charges of delivery of a controlled substance in violation of § 204.-401(1), The Code. His appeal challenges a ruling consolidating the two informations for trial, receiving certain tape recordings in evidence at trial, and a jury instruction on entrapment. We reverse the trial court and remand the case for a new trial.

On July 3, 1975 defendant was charged with a delivery alleged to have occurred June 13, 1975. On July 25, 1975 defendant was charged by separate information with a delivery alleged to have occurred June 26, 1975.

The factual background for the two charges is not disputed in this appeal. For several years Merle Lee Powell (defendant) and his wife were well acquainted with the confidential informant, Mary Harkness and also with her husband. A close relationship developed. For a short period of time, while awaiting a divorce from her husband, Mary Harkness lived in the home of defendant and his wife. Thereafter Harkness left Iowa and lived for a time in North Dakota. Upon returning to Iowa she renewed her relationship with defendant. Evidence was admitted indicating defendant and Mary Harkness thereafter entered into a love affair and became sexually intimate.

Prior to the events giving rise to this charge Harkness brought up the subject of drugs, stating to defendant she had a friend from North Dakota who wished to purchase them. On June 13, 1975 Harkness arranged a meeting between defendant and Dennis Wilbur who is a special agent with the Iowa division of narcotic and drug enforcement. Wilbur was introduced to defendant as Danny and told defendant he was interested in buying marijuana. Defendant sold Wilbur two pound bricks of marijuana for $150, the sale taking place in Wilbur's auto-

mobile. Harkness sat between Wilbur and defendant in the front seat handing the marijuana from defendant to Wilbur and the money from Wilbur to defendant. She was paid $25 by Wilbur for her efforts.

Wilbur told defendant he would be back at a later time to purchase at least 25 pounds of marijuana. On June 24, 1975 Harkness told defendant that Wilbur was again in town and wished to purchase the additional marijuana. Defendant called Wilbur to discuss the matter by telephone. Wilbur taped telephone conversations between the two on both June 24 and 26. On June 26 defendant sold Wilbur another quantity of marijuana at which time Wilbur arrested him.

■ I. Defendant's first assignment challenges the trial court ruling consolidating the two informations. Defendant strongly argues he was prejudiced by the consolidation because his defense of entrapment as to the June 13, charge would be damaged by proof of the June 26 charge. In ordering consolidation the trial court did not have advantage of our recent opinion in *State v. Trudo*, 253 N.W.2d 101, 103–106 (Iowa 1977). In *Trudo* we discussed the authority of a trial court to consolidate separate charges of this nature and determined the question adversely to the contentions defendant urges in this assignment. We are bound by *Trudo* to hold defendant's first assignment is without merit.

II. Defendant's second assignment challenges a trial court ruling receiving in evidence tape recordings of the telephone conversations. We pass various other contentions in connection with defendant's challenge and agree the tapes should not have been admitted because of their reference to other offenses.

The tapes included in part the following conversation:

"MR. POWELL (defendant): Cause I can't afford another bust.

"MR. WILBUR: For sure, man, for sure.

"DEFENDANT: Cause it just cost me $1800 to beat the one I got.

"MR. WILBUR: Yeah, I can dig that.

"DEFENDANT: Well, it cost me twelve hundred to buy a judge off.

"MR. WILBUR: Yeah.

"DEFENDANT: I didn't get no probation. I didn't get nothing."

■ Evidence of a separate crime is inadmissible as bearing on a defendant's guilt unless it falls within the established exceptions. The recognized exceptions permit reception of evidence of other crimes to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove the other, (5) identity of the person charged with the commission of the crime. The basic principle involved is relevancy; if the evidence tends to prove some fact relative to the crime for which defendant is now tried it is properly received even though another offense is thereby necessarily established. Otherwise it should not be admitted. *State v. Jeffs*, 246 N.W.2d 913, 915 (Iowa 1976) and authorities. We do not believe the quoted conversation is relevant. Prejudice to defendant was substantial. It was evidence of another crime and none of the exceptions to the rule barring admission are applicable. It cannot be said the evidence was part of the circumstances surrounding either offense for which defendant was here charged. Its admission calls for a reversal.

III. Because of its possible recurrence upon retrial we should consider defendant's third assignment which challenges the jury instruction on entrapment. In *State v. Mullen*, 216 N.W.2d 375, 382 (Iowa 1974) we adopted the objective standard for testing entrapment. Defendant's challenge to the instruction is based on several grounds but his most serious complaint is that the language of the instruction impermissibly mixed the objective standard with the subjective standard. The instruction given was as follows:

"* * * [I]f you find the defendant has been otherwise proved guilty you should

proceed to the question of entrapment. The burden of proof on this issue is with the State to prove the defendant was not entrapped.

"Entrapment occurs when police induce the commission of a crime by using persuasion or other means which are likely to cause a normally law-abiding person to commit a crime, *and which do in fact cause the defendant to commit the crime.*

"If police use an informer to help them arrange the commission of another crime, the acts of the informer are the acts of the police, for the purpose of this instruction. However, any actions of an informer when he is not acting for the police cannot be the basis for claimed entrapment.

"The law permits police to afford opportunities to persons to commit crimes and they may employ stratagems to catch persons engaged in criminal activity, but they cannot plant in the mind of innocent persons the idea to commit a crime and induce its commission in order to prosecute him. The crucial question is whether the claimed inducement would have been likely to have caused the normally law abiding person to commit the crime in question under the circumstances of this case *and if so, whether they did in fact induce this defendant to commit this crime.*

"Examples of impermissible inducements, depending on the circumstances, are extreme pleas of desperate illness, appeals based primarily on sympathy, pity or close personal friendship, offers of inordinate amounts of money and the like.

"If the State has proved the defendant committed this crime, as previously instructed on, and that he was not entrapped, then you would be warranted in finding the defendant guilty, otherwise not." (Emphasis added.)

■ Parenthetically we should first mention three of defendant's alternative criticisms of the instruction. He points to language in the fourth paragraph: "* * * engaged in criminal activity, but they cannot plant in the mind of innocent persons the idea to commit a crime and induce its

commission in order to prosecute him." We considered substantially the same language in *State v. Potts,* 240 N.W.2d 654, 657 (Iowa 1976). Although we did not hold the language called for a reversal we considered the phrase "innocent persons" to be unfortunate. Under the circumstances in *Potts* we equated the phrase "innocent persons" with the phrase "normally law abiding persons" and hence found no error. On remand the trial court should substitute the phrase "normally law abiding persons" for the phrase "innocent persons."

■ Defendant also challenges the following words from the instruction: "* * they may employ stratagems to catch persons engaged in criminal activity." We find this criticism without merit. The language focuses on the propriety of the police officer's actions rather than on defendant's predisposition to crime. The phrase is in accordance with the objective test.

In defendant's tendered instruction he sought inclusion of the following paragraph: "Examples of impermissible inducements, depending upon the circumstances, are extreme pleas of desperate illness, appeals based primarily on sympathy, sex, pity, or close personal friendship, offers of inordinate amounts of money and the like."

■ The trial court instruction utilized nearly the identical paragraph with the exception of the reference to sex. Defendant argued this omission was error under the record in the instant case. The use of language similar to that contained in the trial court's instruction was considered recently in *State v. Pelelo,* 247 N.W.2d 221, 224–225 (Iowa 1976). In *Pelelo* we did not find reversible error in the entrapment instruction but we expressly disapproved the language contained in the paragraph in question. On remand the entire paragraph should be omitted from the entrapment instruction.

■ Defendant's most serious objection to the instruction is directed at the language we have italicized for emphasis in quoting it above. Defendant argues the words "* * * and which do in fact cause

the defendant to commit the crime" and the words " * * * and if so, whether they did in fact induce this defendant to commit this crime" impermissibly inject the subjective test we rejected in *Mullen*. It is true the main thrust of the instruction articulates the objective test. However mixing the subjective test and the objective test in an instruction is error. *State v. Leins*, 234 N.W.2d 645, 648–649 (Iowa 1975).

■ It is true, as the State contends, the instruction on entrapment should be read as a whole and not piecemeal. *Pelelo*, supra, 247 N.W.2d at 225; *State v. Robinette*, 216 N.W.2d 317, 318 (Iowa 1974).

■ However we are forced to conclude the entrapment instruction given in this case, even when considered as a whole, is erroneous. After setting up the objective test under *Mullen*, supra, the instruction calls for application of such test to this defendant on a subjective basis. Although an argument for such a rule can be made, it is clear the majority in *Mullen* did not intend to apply two tests but only to apply one objective test. It is not necessary in order to establish entrapment for an accused to show his conduct in question occurred as a direct result of the conduct of the officers. It is sufficient for the accused to claim entrapment and to show the law enforcement agent used persuasion or other means likely to cause normally law-abiding persons to commit the offense. *Leins*, supra, 234 N.W.2d at 648–649.

The instruction was erroneous for calling for a subjective application of the objective test for entrapment.

The judgment of the trial court is reversed and the case is remanded for a new trial.

REVERSED AND REMANDED.