**STATE of Iowa, Appellee,**

v.

**Joseph Hodges WHITE, Jr., Appellant.**

**No. 93–1130.**

Court of Appeals of Iowa.

Dec. 14, 1994.

---

Linda Del Gallo, State Appellate Defender, and Shari Barron, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., John P. Sarcone, County Atty., and James Ramey and Steve Foritano, Asst. County Attys., for appellee.

Heard by DONIELSON, C.J., and HAYDEN and CADY, JJ.

HAYDEN, Judge.

Shortly before 7 p.m. on November 29, 1992, a young black man entered the crowded Drake Diner in Des Moines. He approached the front counter where manager Cara McGrane stood and held a gun to her head. The man shot McGrane in the head and ordered another Drake Diner employee standing nearby to open the cash register. Tim Burnett, also a manager of the Diner,

heard the shot and ran from the back of the restaurant toward the front counter area. The gunman shot Burnett and left the Diner with approximately $1470. McGrane and Burnett died instantly from their wounds.

Police interviewed many witnesses to the crime. Descriptions of the gunman were varied, particularly in regard to his height and to what he was wearing on his head and face. Police learned the gunman held the weapon in his right hand. Three witnesses, Scott Birrer, Dontrell Ducker, and Jonas Chladek, had seen the gunman up close and worked with the police to develop a composite picture of the gunman. Scott Birrer was talking to McGrane when the gunman shot her. Dontrell Ducker and Jonas Chladek were both close to the cash register area when McGrane was shot.

Police received many tips regarding the identity of the gunman. One tip came from a confidential informant through his/her attorney who also requested confidentiality. Police learned from this informant Joseph White and his cousin, Alf Freddy Clark, may have been involved in the Drake Diner murders. One police report of a phone conversation between the informant and his/her attorney (in the presence of police) stated the informant identified only Clark as the gunman. The investigation began to focus on these two men.

Police discovered the weapon used in the Drake Diner shootings, a Grizzly .44 magnum, semi-automatic pistol, was linked to White both prior to and following the November 29 shootings. Witnesses stated they had observed White with a similar gun a few days before the Drake Diner incident. In addition, police recovered shell casings from a November 15 shooting which were fired from the murder weapon. White was seen walking toward the house where this shooting occurred within minutes of the shooting. Witnesses also saw White with the gun within twenty-four hours after the Drake Diner shootings. White was at a house party holding the gun when it accidentally fired into the floor. Again, the shell casings recovered from this shooting were fired from the same firearm used in the Drake Diner murders.

Birrer, Ducker, and Chladek all identified White as the gunman after viewing a photo array.

White was arrested and charged with robbery and two counts of murder. Police later learned the .44 Grizzly, a rare gun, was stolen from a residence in Fall City, Washington, sometime during the weekend of October 9 through October 11, 1992. White lived in Kent, Washington, approximately thirty miles away from Fall City, during this time. He had visited the residence the weekend it was stolen. Police also learned the weapon had been fired in White's Kent apartment shortly after it was reported stolen. On October 17 a Kent police officer entered the apartment to investigate a report a gun had been fired. The police officer found a .44 magnum shell casing in a rain gutter on the roof of the apartment, a .44 caliber ammunition clip, another spent shell casing, and a harness for a shoulder holster.

Prior to trial, White filed an application for the State to identify the confidential informant and his/her attorney. After interviewing the attorney in camera the court denied White's request. White also filed a motion to suppress the evidence seized from his Kent apartment and a motion to change venue; both motions were denied.

At White's jury trial Birrer, Ducker, and Chladek identified him as the man who shot McGrane. In addition, two witnesses who also saw the gunman identified White. A young woman, believed by White to be the confidential informant, denied at trial she had ever said Clark was the gunman. White testified and admitted he brought the .44 Grizzly to Iowa but claimed he sold the gun, was left-handed, and did not commit the Drake Diner shootings.

The State presented evidence of drawings, writings, and statements made by White while he was in jail awaiting trial. The drawings portrayed variations of a gangster with a gun in his right hand, and several drawings contained initials of White near the gangster figure.

The jury found White guilty of robbery and two counts of murder. White filed a motion for a new trial on the basis of newly-

discovered evidence. White claimed the State had withheld exculpatory evidence regarding a witness. Jodi Guill reported to police she was driving just east of the Drake Diner at approximately 7 p.m. on November 29, 1992. She stated a young black man wearing a dark jacket and hooded sweatshirt with a stocking cap or ski mask ran into the street in front of her car. Guill was shown the photo array and identified someone other than White as the man she saw. White received a police report recounting Guill's statement but no information regarding her failure to identify White. The motion for new trial was overruled. Although the court found the State had withheld exculpatory evidence, it concluded the evidence was immaterial because Guill was not credible. White was sentenced to a term of life imprisonment.

White appeals his conviction. He raises seven issues on appeal: (1) there was insufficient evidence of his guilt; (2) the court erred in excluding evidence from the confidential informant and his/her attorney where such evidence was allegedly necessary to impeach the confidential informant; (3) the trial court abused its discretion in admitting character evidence; (4) the trial court erred in denying his motion to suppress evidence seized from his apartment; (5) the trial court erred in denying his motion for a new trial based on newly-discovered evidence; (6) the trial court abused its discretion in denying his change of venue motion; and (7) he was denied the right to effective assistance of counsel. We will discuss each issue in turn.

## I. Sufficiency of the Evidence.

The first issue is whether defendant was proven guilty beyond a reasonable doubt of two counts of first-degree murder and one count of first-degree robbery. The standard of review in challenging the sufficiency of the evidence is well established. *State v. Lampman,* 342 N.W.2d 77, 81 (Iowa App.1983). We will uphold a verdict where there is substantial evidence in the record tending to support the charge. *State v. Aldape,* 307 N.W.2d 32, 39 (Iowa 1981).

When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State, including legitimate inferences and presumptions which may fairly and reasonably be deduced from the evidence in the record. *State v. Bass,* 349 N.W.2d 498, 500 (Iowa 1984); *State v. Hall,* 371 N.W.2d 187, 188 (Iowa App.1985). Direct and circumstantial evidence are equally probative so long as the evidence raises "a fair inference of guilt and [does] more than create speculation, suspicion, or conjecture." *State v. Hamilton,* 309 N.W.2d 471, 479 (Iowa 1981). It is necessary to consider all the evidence in the record, and not just the evidence supporting the verdict, to determine whether there is substantial evidence to support the charge. *Bass,* 349 N.W.2d at 500; *Hall,* 371 N.W.2d at 188. Substantial evidence means evidence which would convince a rational fact finder the defendant is guilty beyond a reasonable doubt. *State v. LeGear,* 346 N.W.2d 21, 23 (Iowa 1984); *Hall,* 371 N.W.2d at 188.

The evidence proved beyond a reasonable doubt defendant is guilty of the crimes at the Drake Diner. The evidence shows defendant possessed the murder weapon before, during, and after the murders. No less than five witnesses identified defendant as the person who entered the Drake Diner and shot Cara McGrane and Tim Burnett. Furthermore, several days before the murders defendant did not have any money. However, on December 2 defendant treated himself and his friends to a party at a Des Moines hotel, and the evidence shows defendant paid the $140 charge for their room and paid for food and beverages. Such evidence is probative of guilt. *State v. Kane,* 492 N.W.2d 209, 211 (Iowa App.1992) (evidence admissible "to show the night before the robbery Kane had only $26, but when the bank opened Monday morning he had $500").

Defendant makes much of inconsistencies in the testimony of some of the other restaurant patrons in their identification of the gunman. "However, any conflict in the evidence is left to the jury to resolve." *State v. Miles,* 490 N.W.2d 798, 799 (Iowa 1992) (quoting *State v. Allen,* 348 N.W.2d 243, 247 (Iowa 1984)). The evidence amply demonstrates defendant's guilt.

## II. *Confidential Informant.*

■ Defendant next contends the trial court improperly barred evidence of alleged prior inconsistent statements of a confidential informant. We review for abuse of discretion. *State v. Nelson*, 395 N.W.2d 649, 652 (Iowa App.1986).

The facts behind this contention are somewhat complicated. On December 3, 1992, Officer Rowley spoke with an attorney at the attorney's office. This attorney is known as confidential informant A. Informant A advised the police officer he had a client with information about the Drake Diner murders. This client is known as Informant B. Informant A then called Informant B on the telephone and the officer posed questions which A in turn posed to B. Both confidential informants requested and received a promise of anonymity.

Officer Rowley made a police report regarding the December 3, 1992, conversation. The police report states B told A that Alf Freddy Clark, defendant's cousin, was the gunman. The report also states A advised the officers B wanted to be paid $2000 for this information.

On December 5, 1992, Officer Rowley spoke directly with B over the telephone. The phone call had been arranged by A. During this phone call, B said Clark and defendant had told another person they committed the crimes. B told Rowley that Clark had never admitted to B he (Clark) "did it." B also stated he/she did not directly know who the gunman was. Informant B believed either Clark or defendant could have been the gunman. Informant B also stated after the murders Clark and defendant came to B's residence, where a black .44 magnum handgun was accidentally discharged by defendant. B described the weapon as being "Joe's gun" and stated he (defendant) was the one who carried it in the house. According to B, Clark had no gun.

At the April 29 hearing, the State resisted disclosure and successfully requested the court question A during an in camera proceeding at which neither party would be present. The in camera proceeding was to determine whether B had in fact stated to A that Clark was the gunman.

The in camera proceeding took place on April 30, 1993. A redacted version of transcript, omitting information identifying A, was released to the parties and made part of the record on appeal. A was sworn and testified regarding the first conversation, on December 3, in which A acted as an intermediary. A claimed to have a "very specific" recall of the December 3 conversation. The court noted both officers had written reports regarding the December 3 conversation which stated B had told A that Clark was the gunman. A told the court those reports were not accurate. According to A's testimony, B had never told A who the gunman was. Also, according to A, B had never stated Clark had admitted committing the crimes at issue to B. A also testified he/she had never told the officers that B named Clark as the gunman and A had no idea why the contrary was reported. At the start of trial, the court denied disclosure of A.

B was questioned at trial and denied having ever told anyone Clark admitted involvement in the murders. The witness also denied having sought $2000 in return for information about the crimes. Later during trial, defense counsel indicated he knew the identity of both informants and he intended to subpoena them. The court replied it would quash any subpoena of A. Ultimately, defense counsel's beliefs regarding the identity of the two informants was confirmed off the record by the State at a hearing in chambers which the court ruled confidential.

The fighting issue here is whether defendant should have been allowed to call A as a witness to impeach B's trial testimony. Defense counsel wanted to impeach B's trial testimony that B had never said Clark admitted committing the murders and B had never asked for $2000 in return for information.

■ The State is ordinarily privileged to withhold the identity of a person who merely gives information about the commission of a crime. *State v. Luter*, 346 N.W.2d 802, 810 (Iowa 1984); *State v. Webb*, 309 N.W.2d 404, 410 (Iowa 1981); *State v. Lamar*, 210 N.W.2d 600, 602 (Iowa 1973). This "informer's privilege" rests on the important public policy of

maintaining the flow of information leading to the investigation and prosecution of criminals. *Luter,* 346 N.W.2d at 810; *Webb,* 309 N.W.2d at 410; *Lamar,* 210 N.W.2d at 602. There are times, however, when a court must balance this important State interest against the defendant's right to prepare and present a meaningful defense. *State v. Nelson,* 395 N.W.2d 649, 652 (Iowa App.1986). Thus, if the informant was present at the scene of the crime, or a participant to it, such person is no longer merely an *informant* but a *witness* whose identity must ordinarily be divulged. *Roviaro v. United States,* 353 U.S. 53, 64, 77 S.Ct. 623, 629–30, 1 L.Ed.2d 639 (1957); *Luter,* 346 N.W.2d at 810; *State v. Sheffey,* 243 N.W.2d 555, 558 (Iowa 1976). "A defendant has no right, however, to confront an informant who does not, directly or indirectly, give any evidence at trial." *State v. Byrd,* 448 N.W.2d 29, 31 (Iowa 1989) (citing *Cooper v. California,* 386 U.S. 58, 62 n. 2, 87 S.Ct. 788, 791 n. 2, 17 L.Ed.2d 730 (1967); *United States v. Francesco,* 725 F.2d 817, 822 (1st Cir.1984); *State v. Wagner,* 410 N.W.2d 207, 213 (Iowa 1987)).

A obviously was not a participant or witness to the crime. Furthermore, the record before us yields no evidence defendant's need for disclosure of the informant outweighs the State's interest in protecting the informant's anonymity. The State's interest against disclosure is strong. Allowing defendant to publicly disclose A's identity would diminish a flow of information from clients who otherwise might advise their attorney of a desire to provide information to law enforcement.

It is also apparent defendant's interest in disclosing A's identity is not nearly as strong. Calling A would not have assisted defendant because A would not have impeached B. A testified under oath B never told A Clark was the gunman. Moreover, defendant elicited from another witness, Barbara Hogan, testimony that B had told her Clark was the gunman. As for impeaching B's denial of having requested $2000 in return for information, defense counsel was allowed to elicit at trial Officer Rowley's testimony B had made such a request.

█ Defense counsel makes much of the fact the defense became aware of A's identity during trial. However, the confidential informant privilege does not necessarily evaporate once a defendant learns the identity of an informant. *See United States v. Smith,* 780 F.2d 1102, 1108–09 (4th Cir.1985). The State still has a legitimate interest in ·preventing disclosure of A's identity to the public. The State's interest in protecting the identity of A outweighs defendant's interest in revealing his identity. We affirm the trial court's quashing of the subpoena.

### III. *Character Evidence.*

Defendant next contends the trial court erred in admitting certain character evidence prohibited by Iowa Rule of Evidence 404(b). Iowa Rule of Evidence 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"The basic principle involved is relevancy; if the evidence tends to prove some fact relative to the crime for which defendant is now tried it is properly received even though another offense is thereby necessarily established." *State v. Powell,* 256 N.W.2d 235, 237 (Iowa 1977).

█ We review for an abuse of discretion. *State v. Freiburger,* 443 N.W.2d 85, 87 (Iowa App.1989). Defendant objects to two pieces of evidence under rule 404(b). We will discuss each in turn.

### A. *Defendant's Statement.*

█ Prosecution witness Coreana Gonzales testified when she observed defendant with a handgun on November 27, 1992, two days before the murders, she told him, "A real man shouldn't have to use a gun." Defendant replied, "A real man that uses a gun wasn't afraid to kill."

Defense objected to this testimony on the ground it constituted inadmissible character evidence prohibited by Iowa Rule of Evidence 404(b). However, this evidence does not fall within 404(b) as evidence of "other

crimes, wrongs, or acts." Rather, the statement is an admission regarding defendant's intention to maintain possession of the gun the witness had observed. Showing defendant's continued possession of the murder weapon until the time of the murders was relevant. We affirm the trial court ruling on this issue.

### B. *Defendant's Drawings.*

■ While defendant was in jail pending trial, he drew pictures depicting a gang member holding a gun in his right hand. Defense objected to this evidence on the ground it constituted inadmissible character evidence prohibited by Iowa Rule of Evidence 404(b). The State supported admission of the evidence on the theory the drawings rebutted defendant's claims he was not the gunman because he was left-handed.

Eyewitness testimony reflects the fact the gunman was right-handed. When he was questioned by police, defendant indicated he could use both hands equally. However, at trial, defendant stated he had lied to the police, and he insisted he was left-handed. The evidence here was relevant to the issue of whether defendant could use a gun with his right hand.

Review of the drawings leave no doubt they depict defendant. Two of the drawings contain the initials "J.O.E.W." over the person drawn, and defendant conceded at trial that stands for "Joe White." One picture bears the initials "J.O.E.," and one picture bears the name "Joseph White." Quite obviously, these pictures depict defendant holding a handgun in his right hand; essentially they are admissions he was right-handed, or could use his right hand. *See State v. Cox,* 500 N.W.2d 23, 25 (Iowa 1993) (admission may be implied by conduct). Thus, the drawings are not governed by rule 404(b). The trial court did not abuse its discretion in admitting the drawings.

### IV. *Motion to Suppress Evidence.*

■ Defendant argues the trial court erred in denying his motion to suppress certain evidence. However, we need not reach the merits of the issue. Error has not been preserved.

Motions to suppress evidence must be filed within forty days after arraignment, and in the absence of good cause untimely motions do not preserve error for appeal. Iowa R.Crim.P. 10(3), 10(4), and 11(1). Defendant's suppression motion was filed on the fifty-fourth day after his arraignment. In its resistance, the State urged the motion was untimely. Defendant alleged as good cause its inability to earlier depose the Washington state police officer who had seized the evidence at issue. However, defendant was placed on notice by the minutes of evidence the State intended to introduce the evidence at issue. Consequently, good cause for the tardy motion has not been shown.

### V. *Motion for a New Trial.*

■ Defendant claims the trial court erred when it denied his motion for a new trial based on newly-discovered evidence. A putative witness claimed she saw a man fitting the description of the gunman after the shooting. The witness saw this person in the vicinity of where the gunman had last been seen by the State's witness. Defendant alleges the prosecution failed to disclose this witness had not identified defendant from a photo array.

■ To prevail on a motion for a new trial based on newly-discovered evidence defendant must show: (1) the evidence was discovered after the verdict; (2) it could not have been discovered earlier in the exercise of due diligence; (3) the evidence is material to the issues in the case and not merely cumulative or impeaching; and (4) the evidence probably would have changed the result of the trial. *State v. Allen,* 348 N.W.2d 243, 246 (Iowa 1984) (citing *State v. Gilroy,* 313 N.W.2d 513, 521–22 (Iowa 1981); *State v. Farley,* 226 N.W.2d 1, 3 (Iowa 1975)). Our scope of review is for abuse of discretion. *State v. Miles,* 490 N.W.2d 798, 799 (Iowa 1992).

We affirm the trial court ruling. We affirm because defendant failed to establish the fourth ground—the evidence at issue probably would have changed the result of the trial. When considered in light of the abundance of evidence of defendant's guilt, we

determine it is not likely defendant would have been acquitted if this witness had testified. The trial court ruling on this issue is affirmed.

## VI. *Motion for Change of Venue.*

 Defendant contends the trial court erred in failing to grant his motion for change of venue. We need not reach the merits of this issue, however. Error has not been preserved.

Defendant has waived his claim here. Defendant filed his motion for change of venue on the forty-seventh day after his arraignment. Such motion must be filed within forty days after arraignment or the claim on appeal is waived. Iowa R.Crim.P. 10(3), 10(4). Because defendant failed to show good cause for the late filing, any claim is waived. *Id.*

## VII. *Ineffective Assistance of Counsel.*

 Defendant claims he received ineffective assistance of counsel. Where the record on direct appeal is not adequate to permit us to resolve the issue, we preserve the defendant's claim for postconviction proceedings so the facts may be so developed. *State v. Koenighain*, 356 N.W.2d 237, 238 (Iowa App.1984). This also gives the allegedly ineffective attorney the opportunity to explain his or her conduct. *State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978). We conclude there is an inadequate record for us to adjudicate the defense claim without counsel's explanation for his conduct. We preserve defendant's ineffective assistance of counsel claim for a later proceeding.

Conviction affirmed.

**AFFIRMED.**